977 So.2d 682 (2008)
Christopher BELLAMY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-594.
District Court of Appeal of Florida, Second District.
February 29, 2008.
Rehearing Denied April 2, 2008.
Robert E. Heyman of Zimmet, Unice, Salzman & Heyman, P.A., Clearwater, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
*683 KELLY, Judge.
Christopher Bellamy appeals from his judgment and sentences for second-degree murder with a weapon for the death of David Anderson, attempted second-degree murder with a weapon for the stabbing of David Decker, and aggravated battery with a deadly weapon for the injury to David DeMedici. We find merit in his argument that the trial court erred in failing to grant his motion for judgment of acquittal as to the second-degree murder and attempted second-degree murder charges, and therefore we reverses
Second-degree murder is "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (2004).
"An act is one `imminently dangerous to another and evincing a depraved mind' if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life." Duckett v. State, 686 So.2d 662, 663 (Fla. 2d DCA 1996) (quoting Fla. Std. Jury Inst. (Crim.) 66). Bellamy moved for a judgment of acquittal arguing that the State had not proved that he acted out of ill will, hatred, spite, or evil intent. We agree.
The charges against Bellamy arose from what witnesses described as a "chaotic brawl," "melee" or "affray" that occurred at the New World Brewery in Tampa. Bellamy was at the New World Brewery to hear his cousin's band, Nuclear Beer. Witnesses described Nuclear Beer as a punk rock band that played its music at "ear splitting volume." At some point during the show, the band invited bar patrons to sing "cover songs" along with them using an extra microphone connected to the bands sound system. Those patrons included David Decker and Joseph Paez.
Decker, who was intoxicated, joined others in singing along with the band; however, he kept stepping on a cable running from the microphone to the sound board. At the request of the sound engineer, Bellamy approached Decker to ask him to move away from the microphone. It was too loud to talk so Bellamy tried to usher Decker away from the microphone by placing his hand on Decker's elbow. Decker turned away and ignored him. However, Decker's friend, Paez, took umbrage at this and approached Bellamy to find out what he was doing. Bellamy tried to explain; however, Paez was not receptive. Bellamy and Paez began to fight. At some point, Decker, whose attention had returned to the band, reeled around and joined Paez in the fight with Bellamy. Decker testified that he placed Bellamy in a "bear hug," pushed him into the wall, felt a pain in his arm and when he looked down, he saw a knife being pulled out of his side.
The State's other witnesses testified generally to having seen Bellamy engaged in an "affray" with a crowd of people who were either trying to break-up the fight between Paez and Bellamy or who were joining in the fight. The crowd backed Bellamy up against a brick wall. Witnesses indicated that at some point the crowd fell and pushed Bellamy to the ground. Some witnesses saw Bellamy with a knife before he fell; others did not. There is some indication that the crowd "surged" and fell when alerted to the presence of a knife. Bellamy testified that after he was pushed down, someone *684 stepped or kneeled on his neck and that he was not able to breathe. He claimed that it was at this point that he took a knife from his rear pocket and used it to get people off him. Eventually, someone in the crowd disarmed Bellamy. Paez testified that David Anderson was pulled from the pile of people on top of Bellamy after Bellamy was disarmed. No witness saw Bellamy stab Anderson or even saw Anderson in the area where the fight took place, except for Paez, who saw Anderson at the bottom of the pile of people on top of Bellamy.
Bellamy did not know Decker or Anderson. Bellamy initially approached Decker at the request of the sound engineer, not because he had any problem with Decker. Nothing the State's witnesses described when testifying about this brief interaction demonstrated any enmity between Bellamy and Decker. Decker was stabbed only after he joined Paez in the fight with Bellamy. All we know about Anderson is that he was stabbed at some point during the ensuing affray. By the accounts of all witnesses, it was a chaotic environment and the entire affray lasted only one or two minutes. We conclude that while the State's evidence may have proved an "impulsive overreaction to an attack or injury," it was insufficient to prove ill will, hatred, spite, or evil intent. See Light v. State, 841 So.2d 623, 626 (Fla. 2d DCA 2003); see also Williams v. State, 674 So.2d 177 (Fla. 2d DCA 1996); McDaniel v. State, 620 So.2d 1308 (Fla. 4th DCA 1993). Accordingly, we reverse Bellamy's convictions for second-degree murder and attempted second-degree murder and remand with directions to enter a judgment of conviction for manslaughter with a weapon and attempted manslaughter with a weapon and to resentence Bellamy accordingly. See Rayl v, State, 765 So.2d 917 (Fla. 2d DCA 2000). In all other respects, we affirm.
Affirmed in part, reversed in part, and remanded for resentencing.
SALCINES and LaROSE, JJ, Concur.