WALLACE, Judge.
 

 James Edward Poole appeals his judgment and sentence for murder in the second degree. After a thorough review of the record, we conclude that the State failed to establish a prima facie case of second-degree murder. For this reason, we reverse Poole’s judgment and sentence and remand for the trial court to adjudge Poole guilty of the lesser offense of manslaughter
 
 [1]
 
 and to resentence him accordingly.
 

 I. THE FACTS
 

 The State obtained an indictment against Poole for the murder in the first degree of Darryl Newsome, one of Poole’s drinking companions. Newsome had no fixed address, and his acquaintances referred to him as a “floater.” Newsome was a large man; he was six feet tall, weighed 273 pounds, and was very strong. Newsome also had a reputation for violence, especially after he had consumed alcohol or drugs.
 

 Newsome, Poole, and several other men were regular visitors at the recreational vehicle where Jerry Headley lived in Tampa. Newsome frequently bullied Headley. Headley had cancer, and he was debilitated as a result of his illness.
 

 On the afternoon of October 17, 2007, Newsome, G.M., and one or two other men had gathered at Headley’s recreational vehicle. The recreational vehicle was quite small, and the men congregated outside drinking beer and whiskey. Before the incident that led to his death, Newsome had also been smoking crack cocaine.
 

 Poole arrived at Headley’s recreational vehicle when it was beginning to get dark. The drinking continued. G.M. complained to Poole that Newsome had taken Head-ley’s electric fan. G.M. was lying on the ground because of the effects of his intoxication. Newsome began to kick G.M. in the back and told him that he was going to beat him. Poole cautioned Newsome to leave G.M. alone because G.M. “was too drunk to even mess with.” Next, New-some went inside Headley’s recreational vehicle. Taking advantage of Newsome’s retreat, G.M. wisely followed Poole’s advice to leave.
 

 
 *698
 
 Later in the evening, all of the men had left the area except Headley and Poole. The two men were inside Headley’s recreational vehicle watching a football game on television. Newsome suddenly returned a few minutes after he had departed and sat down inside the recreational vehicle. The incident that led to Newsome’s death quickly followed. Thus the only witnesses to the killing of Newsome were Headley and Poole. For reasons unexplained in our record, Headley did not testify at trial. For this reason, Poole provided the only evidence concerning what led to New-some’s death.
 

 According to Poole, when Newsome returned to the recreational vehicle, he was visibly angry. Newsome sat in a chair with his fists balled up, his eyes as “big as half dollars,” and moving his lips but not saying anything. Poole had armed himself with a steak knife from Headley’s kitchen because he was afraid Newsome was going to hurt either him or Headley. Newsome was a larger man than Poole. Poole was afraid of Newsome; he believed that he would not be able to defeat Newsome in a fight.
 

 Suddenly, Newsome got up and lunged at Poole in the cramped confines of the recreational vehicle.
 
 [2]
 
 Poole removed the steak knife from his pocket and stabbed Newsome once. Poole testified that when Newsome got up and lunged at him he was in fear that Newsome was going to harm him because Newsome was still angry about the earlier incident when Poole had told Newsome to break off his attack on the obviously intoxicated G.M. Poole said that he was motivated by fear for his own safety, not hatred of Newsome or a wish to kill him. However, there was no evidence that Newsome was armed.
 

 Poole’s single strike with the knife punctured Newsome’s heart and the left side of his diaphragm. Newsome survived long enough to stagger out of the recreational vehicle to a pay phone at a nearby convenience store. Newsome used the phone and apparently called 911. After he had used the pay phone, Newsome collapsed in the convenience store parking lot. Two Hills-borough County Sheriffs deputies who were conducting an unrelated surveillance operation saw Newsome and came to his aid. Newsome soon died as a result of internal hemorrhaging resulting from the stab wound.
 

 Meanwhile, Poole and Headley remained in the recreational vehicle and awaited the arrival of law enforcement officers. The sheriffs deputies who responded to the scene described both men as having the odor of alcoholic beverages about their persons. Later, a toxicology screen performed on Newsome by the medical examiner showed an alcohol level of .06 percent in his blood and was also positive for the presence of cocaine.
 

 The trial court denied the defense motion for judgment of acquittal and submitted the case to the jury on the charge of murder in the first degree. The jury returned a verdict finding Poole guilty of the lesser-included offense of second-degree murder. The trial court adjudged Poole to be guilty and sentenced him to serve a term of twenty years in prison followed by five years of drug offender probation. This appeal followed.
 

 II. DISCUSSION
 

 In his first point, Poole argues that the evidence was insufficient to support his conviction for second-degree murder. We agree. The evidence showed that New-
 
 *699
 
 some and Poole had socialized and drunk together for several years. On the day Newsome was killed, both men had been drinking with Headley and other men at Headley’s recreational vehicle. Later in the evening, Headley and Poole were alone with Newsome inside the small recreational vehicle. Newsome, who had also been smoking crack cocaine, was apparently still angry about Poole’s earlier intervention on behalf of G.M. Without warning, Newsome lunged at Poole in an apparent attack. Poole, who had nowhere to retreat, lashed out once at Newsome with the knife. Unfortunately, Poole’s single blow mortally wounded Newsome.
 

 Newsome was unarmed, and it did not appear that he was aware that Poole had previously armed himself with a knife. Thus Poole’s act of stabbing Newsome through the heart appears excessive, and the jury could reasonably reject his theory of self-defense. However, the State failed to prove that Poole acted out of ill will, hatred, spite, or an evil intent showing the depraved mind essential to establish second-degree murder. Instead, Poole stabbed Newsome because he “knew [Newsome] was fixing to get me.” Thus the evidence showed an impulsive overreaction by Poole to Newsome’s attack that warrants a conviction for manslaughter but not second-degree murder.
 
 See Bellamy v. State,
 
 977 So.2d 682, 684 (Fla. 2d DCA 2008);
 
 Light v. State,
 
 841 So.2d 623, 626 (Fla. 2d DCA 2003);
 
 Rayl v. State,
 
 765 So.2d 917, 919-20 (Fla. 2d DCA 2000);
 
 Williams v. State,
 
 674 So.2d 177, 178 (Fla. 2d DCA 1996);
 
 McDaniel v. State,
 
 620 So.2d 1308, 1308 (Fla. 4th DCA 1993);
 
 Borders v. State,
 
 433 So.2d 1325, 1326 (Fla. 3d DCA 1983);
 
 Pierce v. State,
 
 376 So.2d 417, 418 (Fla. 3d DCA 1979);
 
 Martinez v. State,
 
 360 So.2d 108, 109 (Fla. 3d DCA 1978).
 

 Accordingly, we reverse Poole’s judgment and sentence for second-degree murder with a weapon. On remand, the trial court shall adjudge Poole to be guilty of manslaughter with a weapon and resen-tence him on the lesser charge.
 

 Poole raises two additional points in his appeal. At trial, both the defense and the State requested a jury instruction on the lesser offense of third-degree murder. The trial court declined to give the requested instruction. In his second point, Poole argues that the trial court’s denial of the requested instruction was error. Once again, we agree with Poole.
 
 See Sheridan v. State,
 
 799 So.2d 223, 225 (Fla. 2d DCA 2001);
 
 Peterson v. State,
 
 643 So.2d 9, 10 (Fla. 2d DCA 1994). However, our decision to reverse Poole’s second-degree murder conviction and to remand for him to be adjudicated guilty of manslaughter with a weapon renders Poole’s argument about the jury instruction a moot point. Poole’s third point is without merit and does not warrant discussion.
 

 Reversed and remanded with instructions for the entry of a judgment for manslaughter with a weapon and for resen-tencing.
 

 CASANUEVA, C.J., and NORTHCUTT, J., Concur.
 

 [1]
 

 . § 924.34, Fla. Stat. (2007).
 

 [2]
 

 . In a taped interview made after he was arrested, Poole told detectives that he believed Newsome was preparing to attack either him or Headley.