TAYLOR, J.
 

 The defendant, John Dorsey, appeals his convictions for two counts of second degree murder, possession of a firearm by a convicted felon, and carrying a concealed firearm. His charges arose from a confrontation at a high school “keg” party that ended in tragedy — the loss of two young lives. We affirm the defendant’s convictions for the weapons charges. However, after reviewing the evidence in the light most favorable to the State, we conclude that the evidence was insufficient to sustain convictions for second degree murder. Instead, the evidence established an impulsive overreaction to an attack, which warranted convictions for manslaughter. We further find that the trial court erred in instructing the jury on the justifiable use of deadly force, specifically regarding the duty to retreat under the “Stand Your Ground” law. Accordingly, we reverse the defendant’s convictions for second degree murder and remand for a re-trial on manslaughter charges.
 

 The defendant was charged by indictment with first degree murder for the shooting death of Stephen “Bo” Bunting and second degree murder for the shooting
 
 *523
 
 death of John Lott. At trial, the evidence established that on August 25, 2006, the defendant attended a large “keg” party, where most of the guests were high school students or had recently finished high school. During the party, Bunting and Lott approached the defendant, who was either sitting on the hood of his SUV or leaning against the vehicle. Lott was angry that someone had bumped him earlier while walking past him. Lott and Bunting, along with Lott’s brother and several of their friends, formed a group which surrounded the defendant in a half-circle. A short time before the confrontation, the defendant had armed himself with a gun in the midst of an apparently unrelated dispute with other individuals regarding a keg.
 

 The defendant had his hand in his pocket, and it appeared to witnesses that a confrontation was imminent. One witness claimed that the defendant was smirking as he was leaning against his vehicle and that he did not appear to be afraid. Lott and the defendant began cursing at each other. A prosecution witness acknowledged that it looked like Lott was trying to start a fight with the defendant. Bunting, who was trying to encourage the fight, asked Lott whether he was “going to let him [the defendant] talk to you like that?” At that point, Lott struck the defendant in the face with his fist. The defendant was hit “pretty hard” and fell back against his vehicle.
 

 After the defendant was punched, he quickly pulled out a gun, shot Lott once and shot Bunting once.
 
 [1]
 
 Lott and Bunting were, at most, two or three feet away from the defendant. Lott died from a single gunshot wound to the chest, and Bunting died from a single gunshot wound to the abdomen. After the shootings, the defendant jumped into his vehicle and drove away.
 

 According to the medical examiner, the path of the gunshot wounds was consistent with the decedents leaning forward as they were shot. Lott and Bunting were both at least one foot away from the shooter. Lott had a blood alcohol level of 0.249 grams per deciliter, over three times the legal limit for driving. Bunting had a blood alcohol level of 0.05 grams per deciliter, and also had Xanax in his blood, in an amount described as being within a therapeutic range. Lott, who was heavily tattooed, had a roll of coins wrapped in black electrical tape in his pants pocket. There was also evidence at trial that both Lott and Bunting had a reputation for violence. One witness claimed that Lott and Bunting were known to jump people and they liked to fight, not always fairly.
 

 At the conclusion of both the State’s case and at the close of all the evidence, the trial court denied the defendant’s motions for judgment of acquittal. One of defense counsel’s arguments in support of the motion for judgment of acquittal was that the defendant could not be convicted of murder as a matter of law; rather the jury should consider only manslaughter charges, as the evidence showed only that the defendant had an impulsive overreaction when being attacked.
 

 Following deliberations, the jury returned its verdict, finding the defendant guilty of second degree murder as a lesser included offense on Count I, guilty of second degree murder as charged in Count II, and guilty of possession of a firearm by a convicted felon and carrying a concealed firearm as charged in Counts III and IV.
 

 
 *524
 
 The first issue we address is whether the evidence was sufficient to sustain the defendant’s convictions for second degree murder. A de novo standard of review applies to our review of the denial of a motion for judgment of acquittal.
 
 Turner v. State,
 
 29 So.3d 361, 364 (Fla. 4th DCA 2010). “If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.”
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002).
 

 The crime of second degree murder is defined as the “unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.” § 782.04, Fla. Stat. (2006). An act is imminently dangerous to another and evinces a “depraved mind” if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) is done from ill will, hatred, spite or an evil intent; and (3)is of such a nature that the act itself indicates an indifference to human life.
 
 Wiley v. State,
 
 60 So.3d 588, 591 (Fla. 4th DCA 2011); Fla. Std. Jury Instr. (Crim.) 7.4.
 

 Florida courts have held that an impulsive overreaction to an attack or injury is itself insufficient to prove ill will, hatred, spite, or evil intent.
 
 See, e.g., Light v. State,
 
 841 So.2d 623, 626 (Fla. 2d DCA 2003);
 
 McDaniel v. State,
 
 620 So.2d 1308 (Fla. 4th DCA 1993). “Although exceptions exist, the crime of second-degree murder is normally committed by a person who knows the victim and has had time to develop a level of enmity toward the victim.”
 
 Light,
 
 841 So.2d at 626. Moreover, “[hjatred, spite, evil intent, or ill will usually require more than an instant to develop.”
 
 Id.
 

 While the jury may reasonably reject the theory of self-defense in a case involving a defendant’s impulsive overreaction to a victim’s attack, such a case warrants a conviction for manslaughter, not second degree murder.
 
 See Poole v. State,
 
 30 So.3d 696, 698-99 (Fla. 2d DCA 2010) (where defendant stabbed the unarmed victim once after the victim had lunged at him in a confined R.V., the evidence showed an impulsive overreaction to an attack, warranting a conviction for manslaughter but not second degree murder);
 
 Bellamy v. State,
 
 977 So.2d 682, 684 (Fla. 2d DCA 2008) (reversing convictions for second degree murder and attempted second degree murder where defendant stabbed victims after he was pushed to the ground and someone stepped on his neck at a nightclub);
 
 Rayl v. State,
 
 765 So.2d 917, 919-20 (Fla. 2d DCA 2000) (prosecution failed to establish that the defendant acted with depraved mind where the victim stormed into the defendant’s place of business threatening to kill the defendant, the defendant shot the victim twice, and the victim had come toward the defendant before each shot; the fact that the defendant was standing with his arms folded when officers arrived was insufficient to prove ill will);
 
 McDaniel,
 
 620 So.2d at 1308 (prosecution failed to prove prima facie case of second degree murder where evidence showed that the victim initiated altercation with the defendant by hitting him in the mouth and knocking him to the ground; although defendant’s use of knife to ward off further attack may have been excessive, thereby negating a finding of self-defense, his acts did not evince depraved mind; no evidence was presented that defendant acted out of ill will, hatred, spite, or an evil intent).
 

 
 *525
 
 In the present case, the evidence in the light most favorable to the State is insufficient to sustain the defendant’s convictions for second degree murder. Here, it was uncontested at trial that the defendant had his back against his vehicle when he was confronted by multiple men, including the victims, Lott and Bunting. The victims had both been drinking and Lott, in particular, was heavily intoxicated. After the defendant and Lott exchanged words, Lott punched the defendant in the face, with Bunting’s encouragement, causing the defendant to fall back against his vehicle. Although a jury could reasonably find that the defendant’s use of a gun was excessive, thereby negating a finding of self-defense, no evidence was presented that the defendant acted out of ill will, hatred, spite, or an evil intent. Furthermore, we reject the State’s argument that the defendant’s demeanor before the confrontation was sufficient to prove beyond a reasonable doubt that he acted with a depraved mind. The defendant’s use of deadly force occurred only after he was attacked, and the State has pointed to no record evidence that the defendant had any previous grudge against these victims or any ongoing disputes between them.
 

 In short, this case is not materially distinguishable from
 
 Poole, Rayl,
 
 and
 
 McDaniel,
 
 where second degree murder charges were reduced to manslaughter because the evidence established an impulsive overreaction to a victim’s attack or injury rather than an act out of ill will, hatred, spite, or an evil intent. Here, the evidence similarly showed an impulsive overreaction to an attack, warranting convictions for manslaughter but not second degree murder. The trial court thus erred in denying the defendant’s motions for judgment of acquittal on the murder charges.
 

 Ordinarily, we would simply direct that the trial court reduce the second degree murder convictions to manslaughter convictions. However, in this case, an error in the jury instructions on self-defense warrants a new trial.
 
 [2]
 

 By way of background, section 776.012, Florida Statutes (2006), provides that a person is justified in the use of deadly force and does not have a duty to retreat if:
 

 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
 

 (2) Under those circumstances permitted pursuant to s. 776.013.
 

 § 776.012, Fla. Stat. (2006).
 

 Section 776.013(3), Florida’s so-called “Stand Your Ground” law, in turn provides:
 

 A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
 

 § 776.013(3), Fla. Stat. (2006).
 

 During the charge conference, the defense requested that the “Stand Your Ground” instruction, based on section 776.013(3), not be given. He did so be
 
 *526
 
 cause the defendant was presumably “engaged in an unlawful activity” at the time he used deadly force; he was a convicted felon in possession of a firearm and he was carrying a concealed firearm. Thus, the “Stand Your Ground” instruction did not apply to him. The trial court denied the defendant’s request and ultimately gave the jury the standard jury instruction, which is consistent with the “Stand Your Ground” law set forth in section 776.013(3).
 

 After the court denied the defense request that the “Stand Your Ground” instruction be omitted from the jury instructions, the defendant requested that the jury receive the following instruction:
 

 If you find that the defendant was engaging in an unlawful activity or was attacked in a place where he did not have the right to be then you must consider if the defendant had a duty to retreat.
 
 If the defendant was placed in a position of imminent danger or death or great bodily harm and it would have increased his own danger to retreat then his use of force likely to cause death or great bodily harm was justifiable.
 

 The emphasized portion of the above instruction was taken from the pre-2005 standard jury instruction on the justifiable use of deadly force.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 3.6(f) (2004). The prosecutor initially agreed to the requested instruction, but later announced an objection, believing that it would be error for the court to give anything other than the current standard instruction. The trial court declined to give the specially requested instruction.
 

 A criminal defendant is entitled to a special jury instruction if the following three elements are satisfied: (1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.
 
 Stephens v. State,
 
 787 So.2d 747, 756 (Fla.2001).
 

 Prior to the enactment of section 776.013, Florida common law provided that, with the notable exception of the “castle doctrine,” a person could not resort to deadly force without first using every reasonable means within his or her power to avoid the danger, including retreat “to the wall.”
 
 See Weiand v. State,
 
 732 So.2d 1044, 1049 (Fla.1999);
 
 State v. Smiley,
 
 927 So.2d 1000, 1001 (Fla. 4th DCA 2006).
 

 However, even under the common law rule, where a defendant has retreated to the wall or retreat would be futile, deadly force is justifiable.
 
 See Thompson v. State,
 
 552 So.2d 264, 266 (Fla. 2d DCA 1989);
 
 State v. Rivera,
 
 719 So.2d 335, 338 (Fla. 5th DCA 1998).
 

 The legislature’s creation of section 776.013 in 2005 “expanded the right of self-defense and abolished the common law duty to retreat when a person uses deadly force in self-defense to prevent imminent great bodily harm or death.”
 
 McWhorter v. State,
 
 971 So.2d 154, 156 (Fla. 4th DCA 2007). Section 776.013 thus altered the law so that now there is “no duty to retreat” under a broad array of circumstances.
 
 Smiley v. State,
 
 966 So.2d 330, 335 (Fla.2007). In other words, section 776.013 created a new affirmative defense for situations in which one may use deadly force without first retreating.
 
 Id.
 

 For offenses occurring after the effective date of section 776.013, several cases have found fundamental error where the jury received the pre-2005 standard instruction on the justifiable use of deadly force.
 
 See Williams v. State,
 
 982 So.2d 1190, 1194 (Fla. 4th DCA 2008);
 
 see also Richards v. State,
 
 39 So.3d 431, 433-34 (Fla. 2d DCA 2010). However, in the present case, unlike in
 
 Richards
 
 and
 
 *527
 

 Williams,
 
 there was an issue as to whether the defendant was engaged in an unlawful activity at the time he was attacked. The current standard instruction does not inform the jury of the parameters of the duty to retreat in situations where the defendant was engaged in an unlawful activity or was not in a place where he had the right to be at the time he was attacked.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 3.6(f) (2011) (“If the defendant was not engaged in an unlawful activity and was attacked in any place where [he] had a right to be, [he] had no duty to retreat and had the right to stand [his] ground and meet force with force, including deadly force, if [he] reasonably believed that it was necessary to do so to prevent death or great bodily harm to [himself] or to prevent the commission of a forcible felony.”).
 

 Under the unique circumstances of this case, the trial court erred in instructing the jury as to the “Stand Your Ground” law over the defendant’s objection, without also instructing the jury as to the scope of the duty to retreat in situations where the defendant was engaged in unlawful activity-
 

 The plain language of section 776.013(3) provides that the “no duty to retreat” rule applies only where a person “is not engaged in an unlawful activity.” We need not decide the exact scope of the statutory term “unlawful activity” under section 776.013(3). Whatever the scope of that term, we hold that possession of a firearm by a convicted felon qualifies as “unlawful activity” within the meaning of the Stand Your Ground law.
 
 [3]
 

 Cf Dawkins v. State,
 
 252 P.3d 214 (Okla.Crim.App.2011) (holding that a defendant who was in possession of an illegally modified weapon — a sawed-off shotgun — was engaged in an unlawful act and was not entitled to benefit from Oklahoma’s stand-your-ground statute, but finding that “minor infractions” would not constitute “unlawful activity”).
 

 Accordingly, where, as here, a defendant was engaged in an unlawful activity or was in a place where he did not have a right to be at the time he was attacked, the common law duty to retreat still applies.
 
 See Ady v. Am. Honda Fin. Corp.,
 
 675 So.2d 577, 581 (Fla.1996) (“A court will presume that such a statute was not intended to alter the common law other than by what was clearly and plainly specified in the statute.”). But even the common law duty to retreat is not absolute — the common law before section 776.013 recognized that there was no duty to retreat where a defendant had retreated to the wall or retreat would be futile.
 

 Here, the requested instruction on the duty to retreat was supported by the evidence (i.e., that the defendant was unlawfully possessing a firearm), the standard instruction did not adequately address the scope of the duty to retreat in cases where the defendant was engaged in unlawful activity, and the special instruction, which was derived from the pre-2005 standard jury instruction, was a correct statement of the common law duty to retreat and was not misleading or confusing.
 

 Because there was evidence that the defendant was engaged in unlawful activi
 
 *528
 
 ty, the trial court should not have given the standard instruction on the Stand Your Ground law over the defendant’s objection, without also giving the defendant’s specially requested instruction. Alternatively, in light of the defendant’s objection to the Stand Your Ground instruction and the evidence that the defendant was engaged in unlawful activity at the time he was attacked, the court could have simply omitted the Stand Your Ground instruction and given the pre-2005 standard instruction on the justifiable use of deadly force.
 
 [4]
 
 Either approach would have served to explain to the jury the parameters of the duty to retreat in cases where the defendant was engaging in unlawful activity at the time he was attacked. Although the defendant’s claim of self-defense was arguably weak in this case, he was nevertheless entitled to a proper instruction on the law.
 
 See Wright v. State,
 
 705 So.2d 102, 104 (Fla. 4th DCA 1998) (stating that a criminal defendant is entitled to have a jury instruction on his theory of defense if there is
 
 any
 
 evidence supporting his theory).
 

 Based on the foregoing, we reverse for a new trial on charges of manslaughter.
 

 Affirmed in part, Reversed in part, and Remanded for a new trial on charges of manslaughter.
 

 HAZOURI and LEVINE, JJ„ concur.
 

 [1]
 

 . The testimony at trial varied as to whether the defendant fired two or three shots. One of the victims’ friends claimed that after the defendant shot both victims, the defendant fired a third shot, directed at him, but missed.
 

 [2]
 

 . As to all other issues raised, they are either rendered moot by our disposition or they are otherwise without merit.
 

 [3]
 

 . In a separate point on appeal, the defendant makes an alternative argument that the term “unlawful activity" in the Stand Your Ground statute should be interpreted to apply only to forcible felonies. We reject this argument without further discussion. Nothing in this opinion, however, should be read as limiting a convicted felon's right to raise a defense of necessity to an unlawful possession of a firearm charge in an appropriate case.
 
 See Marrero v. State,
 
 516 So.2d 1052, 1054 (Fla. 3d DCA 1987) ("[T]he law has long recognized that there may be circumstances under which a convicted felon's possession of a firearm would be justified and his conduct declared not criminal.”).
 

 [4]
 

 . That instruction provides in pertinent part: The defendant cannot justify the use of force likely to cause death or great bodily harm unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to that force.
 

 The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if, by retreating, he could have avoided the need to use that force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm, and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable.