EDWARDS, J.
Craig Alan Sandhaus appeals his conviction of second-degree murder. We find that although the evidence supports a conviction of manslaughter, it does not support a conviction of second-degree murder. Thus, we conclude that the trial court erred in denying Appellant’s motion to reduce the conviction from second-degree murder to manslaughter. We affirm as to all other issues raised on appeal.
On May 7, 2011, at approximately midnight, Appellant and his younger brother went to a bar in downtown Orlando. They separated for a while, and then met back up around 1:30 a.m. at another bar, The Lodge. The brothers were there for a short time when a bouncer, Fred Trabold, instructed them to leave the bar through the rear exit. Christopher Fuller, another customer at The Lodge that night, asked Trabold to make the brothers leave the bar. Fuller was on probation for a previous battery on Appellant and his probation required he have no contact with Appellant.
The brothers followed Trabold out back, but were upset over being asked to leave. They asked Trabold if Fuller was involved because they knew he frequented The Lodge. Trabold tried to appease the brothers by letting them finish their beers and even offered them more drinks while he went to find a manager. Two other bouncers, Milton Torres and Jose Campos, stayed outside with the brothers. Those two bouncers and the brothers began to argue. According to Appellant, Torres pointed his fingers, like a gun, at Appellant’s brother.
The argument suddenly escalated into a fight when Torres first pushed, then hit, Appellant’s brother. Some other individuals got involved in hitting and grabbing Appellant’s brother. Appellant quickly pulled a knife from his pocket and stabbed Torres three times in his torso. The altercation, which lasted a total of twenty-five seconds from the first shove to the conclusion, was caught on a video surveillance camera. No knife or stabbing could be seen on the video. Torres could be seen on the video as he pulled up his shirt to examine his wounds before he collapsed.
When initially questioned by police, both brothers denied stabbing Torres. The police arrested Appellant’s brother for murder. Several days later, Appellant, accompanied by his privately-retained counsel, admitted to the police that he, not his brother, stabbed Torres. During his confession, Appellant told the police that he feared Fuller had set the brothers up to be jumped in the small alley behind the bar. Appellant said he reacted instinctively, using his knife to try to save his brother’s life. Appellant also told the police that he threw his knife on the ground behind him after stabbing Torres. When speaking with the officers, Appellant denied that he was covering for his brother. All charges were then dropped against Appellant’s brother.
Appellant unsuccessfully attempted to employ the Stand Your Ground law, arguing prior to trial that, he should be immune from the charges because he was defending his brother from great bodily harm. The trial court conducted an evidentiary hearing during which Appellant testified. The trial court denied his motion, finding that the brother’s life was not in jeopardy because the altercation was a simple fist *114 fight that had been underway for a few seconds when Appellant stabbed- Torres. The trial court also concluded that Appellant could have successfully intervened on his brother’s behalf without the use of deadly force; therefore, Appellant’s use of deadly force was unreasonable. The case proceeded to a jury trial.
At trial, several of the bouncers and Appellant’s brother testified. The jury was shown both recorded statements given by Appellant to the police, first denying and then admitting in the second interview that he stabbed Torres. Appellant’s testimony from the Stand Your Ground hearing was also presented to the jury. All the testimony was consistent: neither of the brothers knew any of the bouncers before that night, there was no indication of ill will or hatred displayed by or against the brothers until the arguing and shoving began, nobody threatened physical harm to anybody before the fight actually broke out, and nobody mentioned or displayed a weapon prior to the altercation. The video of the altercation was shown to the jury repeatedly during different witnesses’ testimony.
Appellant’s motions for judgment of acquittal were denied. Among other things, Appellant argued that the evidence, viewed in a light most favorable to the State, failed to show malice, ill will or hatred toward the victim and, thus, proved manslaughter if anything. Appellant’s primary closing argument was that there was no proof that it was Appellant who fatally stabbed Torres, despite Appellant’s confession to the police. Appellant briefly suggested in closing that he acted in defense of his brother and that the evidence did not support murder charges of any type. The jury convicted Appellant of second-degree murder with a weapon. His motions for new trial and for reduction from second-degree murder to manslaughter were denied. The trial judge sentenced him to forty-five years in prison with credit for time served.
A trial court’s denial of a motion for judgment of acquittal is reviewed de novo. See Pagan v. State, 830 So.2d 792, 803 (Fla.2002). Where “a rational trier of fact could lawfully find that the evidence proved the existence of all the elements of the crime of second-degree murder beyond a reasonable doubt,” the appellate court should defer to the trial court’s denial of a motion for judgment of acquittal. Morgan v. State, 127 So.3d 708, 718 (Fla. 5th DCA 2013) (citation omitted).
Second-degree murder is “[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.” § 782.04(2), Fla. Stat. (2011). The Florida Supreme Court has interpreted the section as follows:
Conduct that is imminently dangerous to another and evincing a depraved mind is characterized by an “act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.”
State v. Montgomery, 39 So.3d 252, 255-56 (Fla.2010) (quoting Bellamy v. State, 977 So.2d 682, 683 (Fla. 2d DCA 2008)). “[S]econd-degree murder is normally committed by a person who knows the victim and has had time to develop a level of enmity toward the victim.” Light v. State, 841 So.2d 623, 626 (Fla. 2d DCA 2003) (citing Conyers v. State, 569 So.2d 1360 *115 (Fla. 1st DCA 1990)); see also Morgan, 127 So.3d at 718.
“ ‘[Ejxtreme recklessness’ or ‘an impulsive overreaction to an attack or injury is itself insufficient’ to support a second degree murder conviction.” Antoine v. State, 138 So.3d 1064, 1073 (Fla. 4th DCA 2014) (quoting Dorsey v. State, 74 So.3d 521, 524 (Fla. 4th DCA 2011)). An impulsive overreaction to an attack or injury is insufficient to prove ill will, hatred, or spite. Morgan, 127 So.3d at 718; Bellamy, 977 So.2d at 684. “While the jury may reasonably reject the theory of self-defense in a case involving a defendant’s impulsive overreaction to a victim’s attack, such a case warrants a conviction for manslaughter, not second degree murder.” Dorsey, 74 So.3d at 524 (citing Poole v. State, 30 So.3d 696, 698-99 (Fla. 2d DCA 2010)). Manslaughter is “[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776.” § 782.07(1), Fla. Stat. (2011).
In Bellamy, the Second. District Court of Appel reversed Bellamy’s second-degree murder conviction and remanded with directions to enter a conviction for manslaughter with a weapon. 977 So.2d at 684. Bellamy was involved in a “chaotic brawl” at a punk rock show in a bar. Id. at 683. One victim bear-hugged Bellamy and pushed him towards a wall, and Bellamy stabbed him. Id. The crowd pushed Bellamy to. the ground where he stabbed another victim. Id. Bellamy’s motion for a judgment of acquittal was based on the State’s failure to demonstrate that he acted out of ill will, hatred, spite, or evil intent. Id. The Second District Court agreed with Bellamy, and found that Bellamy did not have any prior interaction with either victim that demonstrated any enmity. Id. at 684. Thus, the court held that the State could only prove an impulsive overreaction to an attack, and not the ill will, hatred, spite, or evil intent required for a second-degree murder conviction. Id.
Similarly, in Poole v. State, 30 So.3d at 697, the Second District Court found that the State failed to establish a prima facie case of second-degree murder ‘where Poole stabbed ah acquaintance in a motor home who lunged at him without warning. 30 So.3d at 699. Though the court found Poole’s actions to be excessive in light of the fact that the victim was unarmed, the court noted that the State nonetheless failed to demonstrate that Poole acted out of ill will, hatred, spite, or evil intent. Id.
To infer depraved mind or conduct that evokes ill will, hatred, spite, or evil intent a court may consider the defendant’s conduct prior to his use of deadly force. Antoine, 138 So.3d at 1067. In Antoine, the appellant was attempting to break up a fight when one of the. victims punched him in the face.. - Id. Two victims attempted to-reach .for weapons and' Antoine drew his own gun and fired at both victims. Id. As one of the victims turned to flee, Antoine shouted “You want some, too?” and shot him in the back. Id. at 1074. Antoine was convicted of second-degree murder. Id. at 1067. He appealed, arguing that he should have only been convicted of manslaughter because his actions resulted from impulsive overreaction rather than motivated by a depraved mind. Id. at 1072. The Fourth District Court of Appel found Antoine had time to consider the nature of his violent act, thus distinguishing his case from an impulsive overreaction. Id. at 1073. The court “inferred not that Antoine was impulsively acting out of fear to save himself, but that he was administering street justice. after he had been punched and insulted.-and after he had disposed of the first assailant.” Id. at *116 1074. Thus, the judgment of acquittal was properly denied because his state of mind could be inferred from the circumstances prior to the shooting. Id.
In Dorsey, 74 So.3d at 525, the Fourth District Court rejected the State’s contention that Dorsey’s demeanor prior to a confrontation with two victims at a keg party was sufficient to prove that he acted with a depraved mind. Shortly before the confrontation, Dorsey armed himself with a gun during an unrelated dispute with other individuals. 74 So.3d at 523. Dorsey was backed against his vehicle when he was confronted by multiple men. Id. at 525. The victims exchanged words with Dorsey and one of them punched Dorsey in the face. Id. Dorsey shot and killed both victims. Id. at 522. The court held that the State failed to establish that Dorsey acted out of ill-will, hatred, or spite. Id.
In this case, no reasonable jury could conclude that the evidence, taken in the light most favorable to the State, established beyond a reasonable doubt that Appellant stabbed Torres based upon ill will, malice, hatred, spite or an evil intent. On the other hand, a reasonable jury could find that the evidence proved, beyond a reasonable doubt, that Appellant impulsively overreacted to seeing Torres hitting Appellant’s younger brother as others joined in the fight. Thus, the evidence supports a conviction for manslaughter, but not a finding of guilt for second-degree murder. Accordingly, the trial court erred in not granting Appellant’s motion to reduce the conviction from second-degree murder to manslaughter. We reverse only as to that issue and remand for entry of an amended judgment of guilt as to manslaughter with a weapon and for appropriate resentencing. We affirm as to all other issues raised on appeal.
AFFIRMED IN PART, REVERSED IN PART. REMANDED WITH INSTRUCTIONS.
ORFINGER and COHEN, JJ., concur.