878 So.2d 473 (2004)
Kimberly D. RASLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-3897.
District Court of Appeal of Florida, First District.
July 30, 2004.
*475 Nancy A. Daniels, Public Defender, and G. Kay Witt, Assistant Public Defender, Tallahassee, for Appellant.
Charles J. Crist, Jr., Attorney General, and Anne C. Conley, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
This is an appeal from appellant's conviction for the offense of second-degree murder. Appellant, Kimberly D. Rasley, raises the following three issues for review: (1) the lower court erred in denying appellant's motion for judgment of acquittal (JOA) in that the state's evidence failed to rebut beyond a reasonable doubt appellant's defense of self-defense, and, as such, the case was insufficient to go to the jury or support a conviction; (2) the lower court erred in denying appellant's motion for JOA because the state's evidence was insufficient to establish that appellant acted with a depraved mind, and at most proved only the commission of manslaughter; (3) the lower court erred in imposing a 25-year minimum mandatory sentence for use of a firearm in the commission of the offense, in addition to reclassifying appellant's conviction from a first-degree felony to a life felony for use of the firearm; as a result, the minimum mandatory sentence constituted an improper double enhancement. We affirm as to all issues.
Appellant's husband was the victim. The two had experienced a turbulent marriage involving several incidents of spousal abuse inflicted on appellant. Following the last dispute and a 911 call, officers arrived at the marital home to find the husband dead from a gunshot wound to the head, lying next to the open side door of the house. Appellant admitted firing the fatal shot. After informing officers of the husband's prior acts of violence, she stated she had recently discovered that her husband was seeing another woman, and, upon intercepting mail at home from the girlfriend, which she described as the "last straw," she took suitcases from the attic, deciding then to leave the home with the parties' three children. While she was so engaged, her husband returned home; an argument ensued between the two, and he pushed her violently against the bedroom wall. Following a shouting match, the husband left the house, only to return shortly thereafter, unlocking the door which appellant had double locked when the husband left. At that point, appellant obtained a Colt .357 magnum revolver, a firearm which she claimed she had never before discharged. Despite her entreaties for him to stop, the husband continued his advance toward her; whereupon, in an act, she claimed, of self-defense, she fired the weapon once at a distance of 24 to 42 inches from the husband's head.[1] In a statement given that night, appellant said she believed the weapon had the safety attached and that she had accidently discharged it. She said she believed that if she had not obtained the weapon, the victim would have beaten her to death.
Appellant's account of the event was generally corroborated by two of her children and her daughter's friend.[2] Investigators at the scene found some evidence of what could have been the result of a domestic dispute: officers observed a crack on the frame of the bedroom door, and a *476 broken ceramic fish on the bedroom floor. They also noted empty suitcases and a telephone book opened to a page which, among other items, listed private investigators. The officers, however, saw no physical signs of injury on appellant, nor did they find any weapon on the victim. A forensic firearms examiner testified the pull on the Colt revolver is four pounds in single-action mode, i.e., when the hammer is cocked, whereas the pull is 11.5 pounds in double-action mode, i.e., when not cocked.
Appellant first urges the trial court erred in denying her motion for JOA to the charge of second-degree murder, in that the state's evidence was insufficient to rebut her defense of self-defense. She points out that she retrieved the weapon only after her husband was attempting to reenter the house following an altercation between them, and asserts she used the weapon solely to defend herself, because she reasonably believed that without resort to it, her life would have been placed in great danger. We cannot agree that the state's evidence was legally insufficient to submit the case to the jury.
Initially, we note that our review standard of an appeal from a denial of a motion for JOA is de novo, in that such motion presents an issue of law, i.e., whether the evidence is sufficient to support the verdict. See Jones v. State, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001). Moreover, in "moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the state that the trier of fact might fairly infer from the evidence." See Sutton v. State, 834 So.2d 332, 334 (Fla. 5th DCA 2003). The rule is firmly entrenched that "[i]f, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
As applied to the theory of self-defense in particular, the following rules should be taken into consideration regarding the state's burden: The state is required to prove beyond a reasonable doubt that the defendant did not act in self-defense. See Brown v. State, 454 So.2d 596, 598 (Fla. 5th DCA 1984). "If a defendant establishes a prima facie case of self-defense, the state must overcome the defense by rebuttal, or by inference in its case in chief." See State v. Rivera, 719 So.2d 335, 337 (Fla. 5th DCA 1998). Rules applicable to the showing required by a defendant include: A demonstration by him or her of "a real necessity for taking a life and a situation causing a reasonably prudent person to believe that danger is imminent." See Hunter v. State, 687 So.2d 277, 278 (Fla. 5th DCA 1997). See also Pressley v. State, 395 So.2d 1175, 1177 (Fla. 3d DCA 1981). A person may use deadly force in self-defense if he or she reasonably believes such force is necessary to prevent imminent death or great bodily harm. A person may not, however, use deadly force without using every available means to avoid danger, including retreat. See Weiand v. State, 732 So.2d 1044, 1049 (Fla.1999). One has a limited duty to retreat in one's own home to the extent reasonably possible, but there is no duty to flee the residence. See id. at 1056-57. Finally, an appellate court, in reviewing the record in a case where such defense is interposed, is required to heed the rules that "[t]he question of self defense is one of fact, and is one for the jury to decide where the facts are disputed." Dias v. State, 812 So.2d 487, 491 (Fla. 4th DCA 2002) (citing Scholl v. State, 94 Fla. 1138, 115 So. 43, 44 (1927)). "A motion for *477 judgment of acquittal should not be granted unless `the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" See Hernandez v. State, 842 So.2d 1049, 1051 (Fla. 4th DCA 2003), quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
In applying the above rules to the conflicting facts at bar, we note that in addition to the evidence appellant presented in support of her self-defense theory, the state submitted evidence from which the jury could reasonably infer that appellant acted out of anger and jealousy because she had discovered that the husband/victim was having an extramarital affair. The evidence, in its entirety, was susceptible of two views, either justifiable self-defense, or an act arising out of jealousy and anger from the fact that the husband was having an affair. See generally Hoffman v. State, 708 So.2d 962, 964 (Fla. 5th DCA 1998). Because the record, in our judgment, contains sufficient evidence from which the jury could conclude that appellant had other reasonable options besides that of deadly force to avoid the danger posed by her husband's advance, including retreat, we agree that the lower court did not err in denying the motion for JOA, as applied to her theory of self defense.
We similarly reject appellant's argument that the trial court erred in denying her motion for JOA as to the offense of second-degree murder, on the ground that the state's evidence at most proved only the lesser offense of manslaughter. The same general rules pertaining to motions for JOA, recited above, are, of course, applicable as well to the issue regarding the sufficiency of the evidence supporting the offense of second-degree murder.
Initially, we consider it helpful to note the distinctions between the elements essential for convictions of second-degree murder and manslaughter. Second degree murder is defined as follows:
The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual....
See § 782.04(2), Fla. Stat. (2001). The term "imminently dangerous to another and evincing a depraved mind regardless of human life" is defined as an act or series of acts that:
1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and
2. is done from ill will, hatred, spite or an evil intent, and
3. is of such a nature that the act itself indicates an indifference to human life.
See Fla. Std. Jury Instr. (Crim.) 7.4; Sigler v. State, 805 So.2d 32, 34 (Fla. 4th DCA 2001), review denied, 823 So.2d 126 (Fla.2002); Duckett v. State, 686 So.2d 662, 663 (Fla. 2d DCA 1996). All three of the above elements must be satisfied. The question, as it specifically relates to the issue before us, similar to that in Light v. State, 841 So.2d 623, 626 (Fla. 2d DCA 2003), is whether the evidence relating to the second element, i.e., that of ill will, et cetera, was legally sufficient. If not, the conviction of second-degree murder should be reduced to the lesser-included offense of manslaughter.
Manslaughter is defined in section 782.07(1), Florida Statutes (2001), as:
(1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide *478 or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree....
Given the extremely deferential standard applicable to the review of denials of motions for JOA, we are unable to say that the evidence is such that there is no view which the jury could take of it favorable to the state that can be lawfully sustained. In other words, once the evidence is viewed in the light most favorable to the state, we are unable to conclude that a rational trier of fact could not lawfully find that the evidence proved the existence of all the elements of the crime of second-degree murder beyond a reasonable doubt.[3]
Appellant next claims the trial court erred in imposing a 40-year sentence, which included a 25-year minimum mandatory term for use of a firearm in the commission of the offense of second-degree murder. In so doing, the court first reclassified the second-degree murder conviction from a first-degree felony to a life felony for use of a firearm in commission of the offense,[4] and thereafter imposed the 25-year minimum mandatory sentence.[5] Appellant contends such sentences constitute an impermissible double enhancement. We cannot agree.
This issue was decided adversely to appellant's position in Brown v. State, 460 So.2d 546 (Fla. 1st DCA 1984), approved, 475 So.2d 1243 (Fla.1985), and State v. Whitehead, 472 So.2d 730 (Fla.1985). In Whitehead, the supreme court concluded subsections (1) and (2) of section 775.087 are not mutually exclusive. Subsection (1) provides that in cases in which a person is convicted of the commission of a felony with a firearm, and the use of a firearm is not an essential element of the offense, the felony for which the person is convicted shall be reclassified upward one category. Subsection (2) provides that persons who commit certain enumerated felonies with a firearm are required to serve minimum mandatory terms before becoming eligible for parole. See Whitehead, 472 So.2d at 732. There is no double enhancement, because subsection (2) does not increase punishment; rather, it provides for a minimum mandatory term of imprisonment. See Brown, 460 So.2d at 547.
AFFIRMED.
ERVIN, DAVIS and BROWNING, JJ., concur.
NOTES
[1] A distance estimated by the medical examiner.
[2] Appellant's youngest child did not testify at the trial.
[3] Pursuant to agreement of counsel, the trial court instructed the jury on manslaughter by intentional act, and that if the jury concluded appellant did not act intentionally, it could not find her guilty of the lesser included offense of manslaughter.
[4] See § 775.087(1)(a), Fla.Stat. (2001). A life felony is punishable by a term of imprisonment for life or a term not exceeding 40 years.
[5] See § 775.087(2)(a)(3), Fla.Stat. (2001). This provision authorizes a 25-year minimum mandatory sentence for the use of a firearm in the commission of any of the felonies enumerated in section 775.087(2)(a)(1), which includes murder.