VAN NORTWICK, J.
Edward M. Mederos petitions for a writ of prohibition following the denial of his motion to dismiss an information charging him with aggravated battery with a deadly weapon (a knife). Below and on appeal, petitioner argues that he is immune from prosecution under Florida’s so-called “Stand Your Ground Law.” See §§ 776.012, 776.031-.032, Fla. Stat. (2009). The record before us contains competent substantial evidencé to support the trial court’s findings that the facts here do not support the application of immunity under the Stand Your Ground Law. Accordingly, we deny the petition.
The charge against petitioner followed an altercation between petitioner and Derek Smith (the victim) during pregame activities on or near the Florida State University campus before a football contest between Florida State University and the University of Miami. Petitioner is a senior special agent with the Department of Homeland Security, Division of Immigration and Customs Enforcement. Among the people with petitioner during the pregame festivities was Javier Ribas, a special agent with the Bureau of Alcohol, Tobacco, and Firearms. As petitioner and his associates made their way to the stadium, Ri-bas and Derek Smith exchanged verbal insults. According to findings of fact made by the trial court, the matter escalated into a physical altercation between Ri-bas and Smith, and petitioner Mederos intervened having drawn his service-issued knife. Smith was stabbed in the palm of the hand and, after campus police arrived on the scene, Mederos was arrested and charged. All involved admitted to consuming alcoholic beverages prior to the incident.
The trial court held an evidentiary hearing at which petitioner, Ribas, Smith and several other witnesses testified. The trial court thereafter entered a detailed order denying the motion to dismiss. While petitioner maintained that he was acting in self-defense as well as in defense of Ribas and that he was protecting himself against a forcible felony, the trial court found that petitioner had not proved by a preponderance of the evidence that his conduct warranted immunity as a matter of law. In pertinent part, the trial court found:
Defendant, along with Mr. Ribas and Mr. Mesa, was walking toward the football game, after an afternoon of tailgating and drinking some beer, when they *9 began engaging in banter with fans from the opposing team. This was initially friendly. At some point an altercation erupted between Mr. Ribas and Mr. Smith. Defendant subsequently became involved in the altercation with Mr. Smith.
The testimony from the various witnesses describing what occurred on the day in question contradicts wildly. Mr. Ribas, Mr. Mesa, and Mr. Mederos testified that Mr. Smith strangled Mr. Ribas. However, Mr. Rogers, Ms. Rinehart, Mr. Honeysuckle, and Mr. Baar testified to only seeing a shoving match between Mr. Smith, Mr. Mederos and Mr. Ribas. Likewise, Mr. Smith denied choking Mr. Ribas. The photograph of Mr. Ribas’ throat taken shortly after the incident showed red markings, consistent with trauma. Dr. Wright also testified that the redness on the throat was consistent with strangulation. However, he conceded on cross examination that the injury depicted could have come from repeated open-handed shoves to the throat.
Based on all the testimony and the evidence, the Court finds that there was a physical altercation, which led to strangulation-type pressure being applied to Mr. Ribas’ throat. However, given Mr. Ribas’ testimony of his extensive training as a U.S. [Air] Marshall and then as an ATF agent, the fact that he was able to assist the victim with first aid, and the conflicting testimony of other witnesses, the Court does not fully credit Defendant’s and Mr. Ribas’ claim as to the severity of the attack or that Mr. Ribas was utterly unable to defend himself.
Regardless of the extent of attack on Mr. Ribas, the testimony of the people who saw the “strangulation” established that Defendant thwarted the continued attack on Mr. Ribas and pulled him from the danger. It was subsequent to removing Mr. Ribas from imminent danger that Defendant continued his altercation with Mr. Smith, ultimately cutting Mr. Smith with his officer’s knife. Neither Mr. Smith nor any of his companions had weapons: only Defendant was brandishing a knife.
Once the attack on Mr. Ribas was over and he was removed from the zone of imminent danger, the putative forcible felony was over. At this point any right that Defendant had to use deadly force in defense of Mr. Ribas terminated as to the forcible felony. [Citation omitted.] Florida Statute sections 776.012, 776.013, and 776.031, when read together, allow for the use of deadly force only to prevent the commission of a forcible felony or for self-defense or defense of another, when the person reasonably believes it is necessary to prevent death or great bodily harm.
Once the forcible felony was terminated, for immunity to attach, Defendant’s use of deadly force must have been based on a reasonable fear of death or great bodily harm to himself or Mr. Ribas. The Court finds that Defendant has not proved by a preponderance of the evidence that his fear of great bodily harm was reasonable. Mr. Smith was intoxicated and unarmed and was throwing punches. Defendant, a Federal law enforcement officer, had been through Federal training on hand-to-hand defensive tactics. Defendant could have defended himself against further aggression without using a deadly weapon. Defendant’s contention that he and his friends were outnumbered by the crowd does not change this finding. Defendant claims that the crowd was hostile and that he feared they would join Mr. Smith in the altercation. However, Defendant offers nothing more than his *10 conclusory testimony that the crowd was egging Mr. Smith on, to establish that he felt the crowd would join in. Further, this claim is contradicted by the testimony of Ms. Rinehart, Mr. Honeysuckle, and Mr. Rogers, who testified that the crowd was not particularly hostile.
Moreover, Defendant contends that he did not use his weapon in aggression but merely had it in his hand as he was defending himself from Mr. Smith’s punches. The physical evidence of Mr. Smith’s injury indicates otherwise. The laceration that Defendant inflicted to Mr. Smith’s hands was on the palm and was very deep. This is inconsistent with a defensive wound inflicted from a forceful jab with a knife. The physical evidence lends credence to Mr. Honeysuckle’s testimony that Defendant was using the knife in an offensive manner rather than merely holding it up in a defensive posture.
(Citations omitted).
In 2005, the Florida Legislature substantially amended chapter 776, Florida Statutes, by a series of enactments collectively known as the Stand Your Ground Law. Ch. 2005-27, Laws of Fla. The Stand Your Ground Law abrogates the common law duty to retreat and generally authorizes the use of force in self-defense or in the defense of others. Significantly for the case under review, the act authorizes the use of deadly force when such force is reasonably believed necessary to prevent imminent death, great bodily harm, or the commission of a “forcible felony,” and the person using such force “is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another....” § 776.013(1).
Chapter 2005-27 amended two existing statutes: sections 776.012 and 776.031; and it created two new statutes: sections 776.013 and 776.032. As amended, section 776.012, Florida Statutes, provides:
A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other’s imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013 [which permits use of defensive force intended or likely to cause death or great bodily harm in a dwelling, residence or occupied vehicle]. [1]
Section 776.032 provides that a person using force as permitted by sections 776.012, 776.013 or 776.031, “is immune from criminal prosecution and civil action for the use of such force” subject to exceptions not applicable here. Under the statute, a defendant is not limited to asserting an affirmative defense at trial that his or her use of force was legally justified. As the Supreme Court explained in Dennis v. State, 51 So.3d 456, 462 (Fla.2010):
Section 776.032 contemplates that a defendant who establishes entitlement to *11 the statutory immunity will not be subjected to trial. Section 776.032(1) expressly grants defendants a substantive right to not be arrested, detained, charged, or prosecuted as a result of the use of legally justified force. The statute does not merely provide that a defendant cannot be convicted as a result of legally justified force.
The appropriate procedural vehicle to raise immunity under section 776.032 is a pretrial motion to dismiss under rule 3.190(b), Florida Rules of Criminal Procedure. Id. When a defendant claims immunity from prosecution under the Stand Your Ground Law, a trial court is to conduct an evidentiary hearing, the purpose of which is to consider factual disputes. Id. at 462-63. Peterson v. State, 983 So.2d 27, 29-30 (Fla. 1st DCA 2008), approved in, Dennis, 51 So.3d at 462-64; Darling v. State, 81 So.3d 574 (Fla. 3d DCA 2012). A writ of prohibition is the proper vehicle for challenging a trial court’s denial of a motion to dismiss a charge made on the ground of immunity from prosecution pursuant to the Stand Your Ground Law. Hair v. State, 17 So.3d 804 (Fla. 1st DCA 2009). As this court made clear in Hair, a review of a trial court’s order on a motion claiming immunity under the statute is governed by the same standard which applies in an appeal from an order denying a motion to suppress. 17 So.3d at 805. Under this standard of review, the trial court’s findings of fact must be supported by competent substantial evidence, while conclusions of law are subject to de novo review.” 17 So.3d at 805, see also Darling, 81 So.3d 574 (using competent, substantial evidence standard to review trial court’s determination as to whether entitlement to immunity was proved by a preponderance of evidence).
As the trial court observed in the order denying the motion to dismiss, the testimony below “contradicts wildly.” While there was testimony süpporting petitioner’s argument that he was acting in defense of Ribas and himself and that he was defending against a forcible felony, there was also competent, substantial evidence that he was not acting in self-defense or in defense of a forcible felony at the time of the stabbing. Therefore, we deny the petition.
By denying dismissal of the information, the trial court concluded that petitioner could not avoid prosecution under the facts as presented at the evidentiary hearing, but Mederos may raise as an affirmative defense at trial the claim that he cannot be convicted given the Stand Your Ground Law. Our denial of the petition, therefore, is without prejudice to the raising of the Stand Your Ground defense at trial. See Peterson, 983 So.2d at 29 (A party claiming immunity whose motion to dismiss was denied “is not precluded from submitting the matter to the jury as an affirmative defense in his criminal trial.”).
LEWIS and SWANSON, JJ., concur.

. By including occupied vehicles within the scope of the Stand Your Ground Law, the legislature specifically abrogated a line of case law holding that the so-called castle doctrine did not apply to vehicles. See, e.g., Baker v. State, 506 So.2d 1056, 1059 (Fla. 2d DCA 1987), supersession recognized in Smiley v. State, 966 So.2d 330 (Fla.2007).