ALTENBERND, Judge.
Sean Christopher Stewart appeals his judgments and sentences for second-degree murder and aggravated assault. The trial court read an incorrect instruction regarding the forcible felony exception to justifiable use of deadly force. Although this error was not preserved, under the circumstances of this case and the applicable precedent, we conclude that the error qualifies as a fundamental error warranting a new trial.
The events resulting in these charges arose out of a party that Mr. Stewart attended at a house in Tampa on the evening of December 1, 2007. The people at the party were watching television while drinking hard liquor and taking Xanax. This context did not contribute to coherent, consistent testimony at the criminal trial several years later.
It is undisputed that Mr. Stewart owned several handguns. When he was invited to this home for the evening, he brought two of his more valuable guns into the home. He apparently wanted to show the weap *915 ons to his friends. As more people arrived at the home, someone put the guns in an out-of-the-way location, apparently as a safety measure.
At some point, Mr. Stewart discovered that the guns were gone. The guns were not recovered after these events, and it is reasonable to assume that someone at the party stole his weapons. Mr. Stewart was very upset.
The witnesses’ versions of these events diverge at this point. Several witnesses testify that Mr. Stewart got into a physical fight with a man named Mr. Baisden. They claim that Mr. Baisden pushed Mr. Stewart into a bookcase. As Mr. Baisden was walking away, Mr. Stewart purportedly got up and hit him in the back of the head, causing him to collapse to the ground for a short time. Mr. Stewart then walked out of the house to his pickup truck.
Mr. Stewart agrees that he walked out of the house to his truck. But in a statement that he voluntarily provided to the police at the scene of these events, he claimed that he had been the victim of the attack inside the home. He claimed that he had been hit on the head with the bookshelf. As a result, he had gone out to his truck to obtain a third handgun that was inside his truck.
Mr. Stewart did not have the keys to his truck, so he broke a window, opened the door, and retrieved the other handgun that was on the seat.[1] At this point in the story, the witnesses’ versions again diverge.
Other people at the party claim that Mr. Stewart returned to the front door of the house, opened it forcefully, and shot Mr. Baisden. When Mr. Baisden dropped to the floor, Mr. Stewart continued to point the gun at a man standing behind Mr. Baisden. This resulted in the charge of aggravated assault. Mr. Baisden managed to get up and leave the house, but he collapsed in the adjacent yard. He lived for several days, but died of infection brought on by the shooting.
In his statement at the scene, Mr. Stewart indicated that he believed his guns had been taken by a group of men including Mr. Baisden. Mr. Stewart maintained that he did not return to the house because the group of men reinitiated the attack on him in the adjacent yard. He admitted that he shot Mr. Baisden, but claimed he did it in self-defense. Thus, he claimed that Mr. Baisden had been shot approximately where he lay in the yard.
The physical evidence in this case supports both versions of the events. The autopsy of Mr. Baisden did not reveal any trauma consistent with being hit on the head with a board. On the other hand, Mr. Stewart had an injury to his head consistent with his story that he had been attacked inside the house. Although Mr. Baisden was found in the yard where Mr. Stewart claimed that he shot him, there was blood in the house consistent with a shooting at that location. Undoubtedly, the most problematic evidence for Mr. Stewart was a bloody projectile that was found in the house, which may have been the bullet that killed Mr. Baisden.
It is noteworthy that Mr. Stewart did not delay in establishing his theory of self-defense. He repeatedly and vociferously explained in his statement at the scene that he did not call the police or leave the scene because he thought the “Stand Your Ground” law allowed him to fire his weapon in this context. At trial, there was no dispute that Mr. Stewart had shot Mr. Baisden and that Mr. Baisden died as a *916 result of this shooting. Mr. Stewart’s only defense was self-defense.
When it came time to finalize the jury instructions, the parties, without objection, settled on a jury instruction addressing justifiable use of deadly force that tracked the language of Florida Standard Jury Instruction (Criminal) 3.6(f). The instruction stated:
A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent
1. Imminent ■ death or great bodily harm to himself or another, or
2. The imminent commission of aggravated battery against himself or another.
However, the use of deadly force is not justifiable if you find:
1. [Mr. Stewart] was attempting to commit, committing, or escaping after the commission of a felony battery; or
2. [Mr. Stewart] initially provoked the use of force against himself, unless:
a. The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger, other than using deadly force on [Mr. Baisden].
b. In good faith, the defendant withdrew from physical contact with [Mr. Baisden] and clearly indicated to [Mr. Baisden] that he wanted to withdraw and stop the use of deadly force, but [Mr. Baisden] continued or resumed the use of force.
Unfortunately, the instruction: “However, the use of deadly force is not justifiable if you find ... [Mr. Stewart] was attempting to commit, committing, or escaping after the commission of a ‘felony battery’ ” should not have been given. As explained in the italicized explanations for these instructions, this forcible felony exception is to be used only when the defendant has been charged with an independent forcible felony. See Fla. Std. Jury Instr. (Crim.) 3.6(f); see also Martinez v. State, 981 So.2d 449, 457 (Fla.2008)(holding that a court should not read the forcible-felony instruction to a jury where the defendant is not charged with an independent forcible felony). The information alleged only second-degree murder and aggravated assault. It did not charge a felony battery.
The likelihood that this instruction created confusion for the jury is compounded because the trial court gave no instruction explaining the definition of “felony battery.” Why felony battery was selected for use in this instruction is unclear. There are, of course, two different crimes that are described as “felony battery.” See §§ 784.03, .041, Fla. Stat. (2007). This jury was not instructed on the elements of either of these offenses.
Factually, the jury had heard evidence that Mr. Stewart had hit Mr. Baisden with the bookshelf before the shooting occurred. Given the evidence, it is not surprising that the State had not charged Mr. Stewart with even misdemeanor battery for that altercation. But if the jurors decided that the judge was explaining to them that the bookshelf battery could be an exception preventing Mr. Stewart from being entitled to raise a claim of self-defense, it is possible that they did not consider his only defense.
In Martinez, the erroneous instruction was not fundamental error; the court explained, however, that “fundamental error only occurs where a jury instruction is ‘so flawed as to deprive defendants claiming the defense ... of a fair trial.” ’ 981 So.2d at 455 (quoting Smith v. State, 521 So.2d 106, 108 (Fla.1988)).
*917 Prior to Martinez, this court, relying on Zuniga v. State, 869 So.2d 1239, 1240 (Fla. 2d DCA 2004), granted numerous new trials due to errors in this instruction after concluding that the instruction “was relevant to the disputed issue at trial.” See York v. State, 932 So.2d 413, 415-16 (Fla. 2d DCA 2006). This test may no longer be entirely sufficient given the discussion in Martinez, 981 So.2d 449, 451-57. Cf. Mosansky v. State, 33 So.3d 756 (Fla. 1st DCA 2010).
However, after Martinez, courts have tended to find fundamental error in this context when the erroneous instruction negates a defendant’s key theory of self-defense. See Vowels v. State, 32 So.3d 720 (Fla. 5th DCA 2010); see also Smith v. State, 76 So.3d 379 (Fla. 1st DCA 2011); Sloss v. State, 45 So.3d 66 (Fla. 5th DCA 2010). In this case, the selection of felony battery as the forcible felony makes the instruction potentially more harmful. We have carefully considered whether the location of the bloody projectile might be evidence sufficient to make Mr. Stewart’s defense “extremely weak,” like the claim in Martinez. 981 So.2d at 456. But after considering Mr. Stewart’s full cooperation at the scene of these events and after carefully reviewing his long statement to the police, we conclude that his defense had sufficient strength that he is entitled to a new trial with proper jury instructions.
Reversed and remanded.
NORTHCUTT and LaROSE, JJ., Concur.

. From our record it is unclear, but it is possible, that Mr. Stewart’s keys and billfold were taken by the same person who took his two handguns.