ORFINGER, J.
Donte T. Morgan appeals his convictions of second-degree murder with a firearm.[1] Morgan argues that the trial court’s self-defense jury instructions were fundamentally flawed and that the court should have granted his motions for judgment of acquittal. We affirm in part and reverse in part.
BACKGROUND
Benjamin Hamilton shared a three-bedroom apartment with Michael Wittig and his girlfriend, Amanda Hines. In the early morning of August 17, 2011, Hamilton was at a local bar with Wittig, Hines, Joel Abbott, and Cassandra Word. While at the bar, Hamilton met Morgan. When the bar closed, the group, including Morgan, went back to the shared apartment. There, Hamilton and Morgan went into Hamilton’s bedroom. As they did, Abbott left the apartment and went to his car for cigarettes, while Word, Wittig, and Hines remained in the living room. Word and Wittig did not know why Morgan went into Hamilton’s bedroom, but knew that Hamilton sold cocaine.
No one saw Morgan or Hamilton carrying any firearms as they entered the bedroom, and, according to Wittig, Hamilton did not own a gun. A short time later, there were two loud pop. Hines went to investigate the noise. She knocked on Hamilton’s bedroom door, called his name, and opened the door. Almost immediately, Wittig heard Hines squeal and, a second or two later, he heard a third loud pop. Word described the time between the initial gunshot and the second gunshot as less than ten seconds, with the third gunshot following within a few seconds after Hines entered into Hamilton’s bedroom.
Morgan then calmly entered the living room. He said nothing to indicate that Hamilton or Hines attacked or threatened him and had no visible injuries or indication that he had been in a struggle. Instead, he pointed a gun at Word and Wit-tig, and demanded their driver’s licenses. He put the gun in his pocket, “moseying on out” of the apartment, nonchalantly *713 passing Abbott in the stairwell. Wittig and Abbott entered Hamilton’s bedroom, saw Hines on the bedroom floor and Hamilton leaning against the dresser. Abbott attempted CPR on Hamilton, while Word contacted police. Hamilton was pronounced dead at the scene and Hines died at the hospital.
Morgan was subsequently arrested after Wittig, Word, and Abbott positively identified him from a photo lineup. Wittig’s and Word’s driver’s licenses were found in Morgan’s apartment. In Hamilton’s bedroom, the crime scene investigator found two baggies on the dresser containing a white, powdery substance, and three spent projectiles, all fired from the same .40 caliber firearm, though no firearm was recovered. The medical examiner determined that Hamilton was shot twice, once in the abdomen and once through the upper back. However, she could not determine the distance between Morgan and Hamilton during the shooting or which wound was inflicted first. The medical examiner determined that Hines was shot once in the lower back from a distance of two feet. Neither Hamilton, Hines nor Morgan had any injuries consistent with a struggle.
Morgan claimed that he acted in self defense. According to him, while at the bar, Hamilton agreed to sell him an ounce of cocaine. They went to Hamilton’s apartment and entered his bedroom. Only then did Hamilton disclose that he only had a half ounce of cocaine and offered to call another person to bring more cocaine. Morgan declined and agreed to purchase just the half ounce. He had $1,000 with him, and when he started to retrieve the money from his pocket, Hamilton pulled a gun and attempted to rob him. They struggled, and as the gun turned toward Hamilton, it fired, hitting him. As Hamilton fell, Morgan said he “reflexively” fired the gun again, this time striking Hamilton in the back. As he moved away from Hamilton with his back to the bedroom door, he was struck from behind. He spun around, firing the gun without looking at his target. He then ran back out into the living room with the gun and robbed Wit-tig and Word. He denied bringing a gun to the apartment.
Morgan was indicted on two counts of first-degree murder with a firearm in the shooting deaths of Hamilton and Hines, and two counts of robbery with a firearm for taking Word’s and Wittig’s driver’s licenses. At trial, the primary issue for the jury’s consideration was whether Morgan acted in self defense. Morgan moved for a judgment of acquittal on the murder charges, which the court denied. The trial court also denied Morgan’s requested special jury instruction on the duty to retreat for an individual engaged in an unlawful activity. Instead, without objection, the trial court instructed the jury on the forcible-felony exception to self defense and the standard jury instruction on the “Stand Your Ground” law, section 776.013(3), Florida Statutes (2011). The jury found Morgan guilty of two counts of the lesser-included offense of second-degree murder and two counts of robbery with a firearm, with the additional findings that Morgan discharged a firearm in the commission of the murders and possessed a firearm when robbing Wittig and Word. He received two consecutive life sentences for the murders and concurrent ten-year minimum mandatory sentences for each robbery conviction.
ANALYSIS

Jury Instructions

The first issue we address is whether the trial court erred by instructing the jury on the forcible-felony exception to the justifiable use of deadly force. *714 Self defense is “an affirmative defense that has the effect of legally excusing the defendant from an act that would otherwise be a criminal offense.” Mosansky v. State, 33 So.3d 756, 758 (Fla. 1st DCA 2010). In asserting self defense, the defendant acknowledges doing the act charged, but seeks to justify it as necessary to protect himself from harm. See Hopson v. State, 127 Fla. 243, 168 So. 810, 811 (1936). The forcible-felony instruction on self defense explains that a claim of self defense is not available to a defendant who is attempting to commit, committing, or escaping after the commission of a forcible felony. § 776.041, Fla. Stat. (2011); Fla. Std. Jury Instr. (Crim.) 3.6(f) (2011). Its plain language makes clear this instruction should be given only when the person is engaged in another, independent “forcible felony” at the time that person allegedly acted in self defense. Although section 776.041(1) disallows self defense to a person “attempting to commit, committing, or escaping after the commission of a forcible felony,” the decisional law holds the statute applies only when the defendant is charged with a separate independent felony. See Martinez v. State, 981 So.2d 449, 457 (Fla. 2008) (holding that it is error for trial court to read forcible-felony instruction to jury where defendant is not charged with independent forcible felony); In re Standard Jury Instructions in Criminal Cases—Report No. 2007-3, 976 So.2d 1081, 1087 (Fla.2008) (expressly stating that “forcible-felony” instruction is to be given only if defendant is charged with independent forcible felony); see also Stewart v. State, 113 So.3d 914, 916 (Fla. 2d DCA 2013); Sloss v. State, 45 So.3d 66, 68 (Fla. 5th DCA 2010).
In this case, since Morgan was not charged with robbing (or attempting to rob) Hamilton, the trial court erred by instructing the jury that, if they found that Morgan was “attempting to commit, committing, or escaping after the commission of robbery,” he could not use deadly force in self defense. The robberies of Word and Wittig occurred after the time Morgan claims to have acted in self defense. As a result, those robberies could not serve as the independent crime needed to allow the forcible-felony jury instructions. See, e.g., Crimins v. State, 113 So.3d 945, 948 (Fla. 5th DCA 2013) (finding fundamental error in instructing jury on forcible-felony exception where aggravated battery and attempted battery charges arose from same underlying facts and defendant raised self defense against both charges, based on theory that alleged victim initiated physical violence by attacking defendant with baseball bat); Santiago v. State, 88 So.3d 1020 (Fla. 2d DCA 2012) (holding that where defendant shot at three individuals, killing one and injuring another, and was charged with one count of murder and two counts of attempted murder, it was error to give forcible-felony instruction as defendant who claimed self defense regarding all three counts was not engaged in separate and independent forcible felony at time he allegedly acted in self defense).
Because Morgan did not object to the forcible-felony exception instruction, we must determine whether its use constituted fundamental error. Jury instructions are subject to the contemporaneous objection rule. Absent an objection at trial, erroneous instructions can be considered on appeal only if fundamental error occurred. See State v. Weaver, 957 So.2d 586, 588 (Fla.2007). However, not all instructional errors are fundamental. E.g., Garzon v. State, 980 So.2d 1038, 1042 (Fla. 2008). When a challenged jury instruction involves an affirmative defense, as opposed to an element of the crime, fundamental error only occurs when a jury instruction is so flawed as to deprive the defendant of *715 a fair trial. Martinez, 981 So.2d at 455. We review a claim of fundamental error de novo. See Elliot v. State, 49 So.3d 269, 270 (Fla. 1st DCA 2010).
We consider the circumstances of each death separately to determine if, considering the totality of the circumstances, the instructional error was fundamental. We first consider Hamilton’s death. The witnesses did not observe Hamilton or Morgan with a gun or the events that occurred in Hamilton’s bedroom. The State did not admit any evidence that precisely established what occurred in the bedroom. The only direct testimony regarding the events that occurred in the bedroom came from Morgan, whose sole defense was self defense, which the improper instruction negated. Thus, we are compelled to conclude that the erroneous instruction calls into question the fairness of Morgan’s trial as to Hamilton’s death and rises to the level of fundamental error. See, e.g., Furney v. State, 115 So.3d 1095 (Fla. 4th DCA 2013) (holding fundamental error to give forcible-felony instruction where eyewitnesses had different version of events, creating classic “he said/she said,” defendant’s sole defense was effectively negated by improper instruction, and state argued forcible-felony exception during closing argument); Richards v. State, 39 So.3d 431, 434 (Fla. 2d DCA 2010) (holding outdated jury instruction on justifiable use of deadly force effectively negated defendant’s claim of self defense, and amounted to fundamental error); Carter v. State, 469 So.2d 194, 196 (Fla. 2d DCA 1985) (“[Wjhere, as here, a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant’s only defense, it is fundamental error and highly prejudicial to the defendant.”).
We reach a different conclusion regarding Morgan’s conviction for Hines’s death. A thorough review of the record leads us to conclude that the erroneous forcible-felony instruction was not fundamental as it did not deprive Morgan of a fair trial since his claim of self defense concerning Hines was extremely weak. See Martinez, 981 So.2d at 456. While Morgan claimed that he was hit from behind, he had no visible injuries and there was no evidence of a struggle. Hines was shot in the back at very close range within a few seconds of entering Hamilton’s bedroom. After the shooting, Morgan was not excited, and did not indicate that he had been threatened or attacked. Instead, he calmly robbed Wittig and Word of their driver’s licenses at gunpoint and left the apartment. See Cancel v. State, 985 So.2d 1127 (Fla. 5th DCA 2008) (holding error to give forcible-felony instruction as defendant was not charged with more than one forcible felony but not fundamental error as defendant’s self-defense claim was extremely weak; after victim threw plastic bottle at defendant’s car, causing no damage, defendant armed himself with bat and confronted intoxicated victim, striking him with enough force to kill him).
Morgan next argues that the trial court erred by denying his requested special jury instruction on self defense and the duty to retreat for an individual engaged in unlawful activity. A defendant is entitled to a special jury instruction if: (1) the special instruction is supported by the evidence; (2) the standard instruction does not cover the theory of defense; and (3) the special instruction is a correct statement of the law and is neither misleading nor confusing. Stephens v. State, 787 So.2d 747, 756 (Fla.2001).
Before jury selection, and again during the charge conference, relying on Dorsey v. State, 74 So.3d 521 (Fla. 4th DCA 2011), *716 Morgan requested a special jury instruction concerning self defense and the duty to retreat for an individual engaged in unlawful activity (i.e., a drug deal), and submitted the following proposed instruction:
If you find the defendant was engaging in an unlawful activity or was attacked in a place where he did not have the right to be then you must consider if the defendant had a duty to retreat. If the defendant was in a position of imminent death or great bodily harm and it would have increased his own danger to retreat then his use of force likely to cause death or great bodily harm was justifiable.
The State objected, arguing that the standard instructions were adequate. The trial court denied Morgan’s request, and instead, gave the standard jury instructions on the justifiable use of self defense. The court also gave the “Stand Your Ground” instruction consistent with section 776.013(3), Florida Statutes (2011), advising the jury:
If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent [ ] death or great bodily harm to himself or to prevent the commission of a forcible felony.
See Fla. Std. Jury Instr. (Crim.) 3.6(f) (2011). There were no objections to the instructions as given.
The plain language of section 776.013(3) provides that the “no duty to retreat” rule applies only when a person “is not engaged in an unlawful activity.” When, as in this case, it is undisputed that the defendant was engaged in unlawful activity at the time he claims that he was attacked, the standard instruction is inadequate because the common law duty to retreat still applies. Dorsey, 74 So.3d at 527; Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996) (“A court will presume that [a statute in derogation of the common law] was not intended to alter the common law other than by what was clearly and plainly specified in the statute.”). But even the common law duty to retreat is not absolute — the common law before section 776.013 recognized that there was no duty to retreat when a defendant had retreated to the wall or retreat would be futile.[2] Dorsey, 74 So.3d at 527. Accordingly, the court should have given both the standard jury instruction on “Stand Your Ground” and the pre-2005 standard self-defense jury instructions.[3] Alternatively, in light of the uncontradict-ed evidence that Morgan was engaged in unlawful activity at the time he was attacked, the court could have simply omit *717 ted the “Stand Your Ground” instruction and given only the pre-2005 standard instructions on justifiable use of deadly force. Under either approach, the jury would have been properly instructed regarding the parameters of the duty to retreat in a case where the defendant was engaged in unlawful activity at the time he was attacked. Morgan was entitled to a proper instruction on the law. See Wright v. State, 705 So.2d 102, 104 (Fla. 4th DCA 1998) (stating that criminal defendant is entitled to have jury instruction on his theory of defense if there is any evidence supporting his theory). This error was harmless with respect to Hines’s death for the reasons previously discussed.

Motion for Judgment of Acquittal

Morgan next argues that the trial court erred in denying his motion for judgment of acquittal on both second-degree murder convictions. We review the denial of a motion for judgment of acquittal de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). The question of whether a defendant acted in justifiable self defense is generally a question for the jury. See Reimel v. State, 532 So.2d 16 (Fla. 5th DCA 1988). Once the defense presents a prima facie case of self defense, the state must disprove the defense beyond a reasonable doubt. Montijo v. State, 61 So.3d 424, 426-427 (Fla. 5th DCA 2011); Falwell v. State, 88 So.3d 970, 972 (Fla. 5th DCA 2012). The state may meet its burden through rebuttal or by inference in its case-in-chief. Stieh v. State, 67 So.3d 275, 278 (Fla. 2d DCA 2011). If the state fails to sustain its burden, the trial court must grant a judgment of acquittal in favor of the defendant. State v. Rivera, 719 So.2d 335, 337 (Fla. 5th DCA 1998). However, a motion for judgment of acquittal based upon self defense should not be granted unless “the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.” Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
Morgan argues that the State failed to prove beyond a reasonable doubt that he was not acting in self defense. We disagree. While Morgan’s version of events could suggest self defense (very tenuously with respect to Hines), and the jury could have believed his story at least as to Hamilton, the State presented sufficient evidence to create a jury question regarding Morgan’s self-defense claim. Morgan testified on his own behalf, claiming that Hamilton attempted to rob him at gunpoint, and that he shot Hamilton twice after a struggle. He claimed that as he backed away from Hamilton’s body, Hines hit him and he shot her without looking. However, his version of the events was not entirely corroborated by the evidence as the witnesses’ testimony and the physical evidence does not demonstrate that any type of struggle occurred. Hamilton was shot in the abdomen and the back, and Hines was shot in the back at very close range. After shooting Hamilton and Hines, Morgan calmly left the bedroom, robbed Wittig and Word of their driver’s licenses at gunpoint. He then left the apartment without telling anyone that he had been attacked or threatened, and did not call the police. He took the gun with him, and it was never recovered. This evidence runs contrary to Morgan’s self-defense argument, and created a jury issue. See Bogart v. State, 114 So.3d 316, 318 (Fla. 4th DCA 2013) (holding that defendant’s actions after killing were contrary to self defense and suggested that defendant had guilty conscience).
Finally, Morgan argues that the State failed to prove the necessary elements of the second-degree murder of Hines because his “impulsive overreaction *718 to a perceived attack from behind” did not evince a depraved mind regardless of human life. Thus, he concludes that the court should have granted his motion for judgment of acquittal on this crime because at most, the evidence supported a manslaughter conviction.
“Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence.” Pagan v. State, 830 So.2d at 803. “If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” Id. Courts should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law. See DeAngelo v. State, 616 So.2d 440, 442 (Fla.1993).
Second-degree murder is the “[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.” § 782.04(2), Fla. Stat. (2011). To prove that an act demonstrates a depraved mind, the State must prove that it done from “ill will, hatred, spite or an evil intent.” Fla. Std. Jury Instr. (Crim.) 7.4; Rayl v. State, 765 So.2d 917, 919 (Fla. 2d DCA 2000). Florida courts have held that an impulsive overreaction to an attack or injury is, at times, insufficient to prove ill will, hatred, spite, or evil intent. See, e.g., Dorsey, 74 So.3d at 524; Light v. State, 841 So.2d 623, 626 (Fla. 2d DCA 2003); McDaniel v. State, 620 So.2d 1308, 1308 (Fla. 4th DCA 1993). “Although exceptions exist, the crime of second-degree murder is normally committed by a person who knows the victim and has had time to develop a level of enmity toward the victim.” Light, 841 So.2d at 626. But, given the extremely deferential standard applicable to the review of denials of motions for judgment of acquittal, we are unable to say that the evidence is such that there is no view which the jury could take of it favorable to the State that can be lawfully sustained. In other words, viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could lawfully find that the evidence proved the existence of all the elements of the crime of second-degree murder beyond a reasonable doubt. See Rasley v. State, 878 So.2d 473, 478 (Fla. 1st DCA 2004).
For these reasons, we reverse Morgan’s conviction for Hamilton’s murder and remand for a new trial. We affirm Morgan’s conviction for Hines’s murder and for the robberies of Word and Witting.
AFFIRMED in part; REVERSED in part; and REMANDED.
GRIFFIN and PALMER, JJ., concur.

. Morgan does not challenge his two convictions of robbery with a firearm.

. Had Morgan been charged with attempting to commit, committing or escaping after the commission of a forcible felony at the time of the shooting, his right to self-defense would have been circumscribed. See § 776.041, Fla. Stat. (2011); Santiago, 88 So.3d at 1022.

. That instruction provides in pertinent part:
The defendant cannot justify the use of force likely to cause death or great bodily harm unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to that force.
The fact that the defendant was wrongfully attacked cannot justify his use of force likely to cause death or great bodily harm if, by retreating, he could have avoided the need to use that force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm, and it would have increased his own danger to retreat, then his use of force likely to cause death or great bodily harm was justifiable.
Fla. Std. Jury Instr. (Crim.) 3.6(f) (2004).