IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

STEPHEN LAMONT EARLY,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-316

_____/

Opinion filed March 3, 2017.

An appeal from the Circuit Court for Bradford County.
David L. Reiman, Judge.

Andy Thomas, Public Defender, and Pamela D. Presnell, Assistant Public Defender,
Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Matthew Pavese and Robert Lee, Assistant
Attorneys General, Tallahassee, for Appellee.


JAY, J.

    Appellant raises four issues in this direct appeal from his conviction and

sentence for the second-degree murder of Quinton Epps with a weapon, a knife.

After careful consideration, we affirm the conviction and sentence, and write only

to address Appellant's two arguments asserting (1) Stand Your Ground immunity

and (2) common-law self-defense. With respect to both of these arguments, Appellant asserts that the evidence must be considered undisputed in his favor because the victim died, and because there were no eyewitnesses to the crime, leaving only his own testimony. We reject this reasoning.

(1) <u>Stand Your Ground Immunity</u>.

Appellant argues that the trial court committed reversible error by denying his motion to dismiss pursuant to section 776.032(1), Florida Statutes (2012), because he established by a preponderance of the evidence that he reasonably believed it was necessary to use deadly force to prevent imminent death or great bodily harm to himself under section 776.012. Section 776.032(1) provides that a person using force as permitted by sections 776.012, 776.013, or 776.031, Florida Statutes (2012), "is immune from criminal prosecution and civil action for the use of such force" subject to certain exceptions. The defendant bears the burden of proving entitlement to this immunity by a preponderance of the evidence. <u>Bretherick v. State</u>, 170 So. 3d 766, 775 (Fla. 2015); <u>Spires v. State</u>, 180 So. 3d 1175, 1176 (Fla. 3d DCA 2015); <u>Hair v. State</u>, 17 So. 3d 804, 805 (Fla. 1st DCA 2009).

When reviewing the trial court's ruling on a motion to dismiss based on immunity under section 776.032(1), the appellate court must apply the same standard of review applicable to a ruling on a motion to suppress. <u>Spires</u>, 180 So. 3d at 1176; <u>Mederos v. State</u>, 102 So. 3d 7, 11 (Fla. 1st DCA 2012); <u>Hair</u>, 17 So. 3d at

2

805. Therefore, the trial court's legal findings are reviewed de novo while the trial court's factual findings are reviewed for competent substantial evidence. Viera v. State, 163 So. 3d 602, 604 (Fla. 3d DCA 2015); Mederos, 102 So. 3d at 11; Hair, 17 So. 3d at 805. Moreover, the trial court's decision is "'clothed with a presumption of correctness, and the [appellate] court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling.'" Viera, 163 So. 3d at 604 (citations omitted).

 (2) Self-Defense.

 Appellant also argues that the trial court erred in denying his motion for judgment of acquittal because the state failed to rebut his reasonable hypothesis of self-defense. The question of whether a defendant acted in justifiable self-defense is generally a question for the jury. Morgan v. State, 127 So. 3d 708, 717 (Fla. 5th DCA 2013); Stinson v. State, 69 So. 3d 291, 292 (Fla. 1st DCA 2009); Rasley v. State, 878 So. 2d 473, 476 (Fla. 1st DCA 2004). "Once the defense presents a prima facie case of self-defense, the state must disprove the defense beyond a reasonable doubt." Morgan, 127 So. 3d at 717; Stinson, 69 So. 3d at 291-92; Rasley, 878 So. 2d at 476. "If the state fails to sustain its burden, the trial court must grant a motion for judgment of acquittal in favor of the defendant." Morgan, 127 So. 3d at 717. "However, a motion for judgment of acquittal based on self-defense should not be granted unless 'the evidence is such that no view which the jury may lawfully take

3

of it favorable to the opposite party can be sustained under the law.'" Id. (quoting Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)); Stinson, 69 So. 3d at 292; Rasley, 878 So. 2d at 476-77.

"[E]ven when there are no other witnesses to the events besides the defendant, a jury is not required to accept the defendant's testimony in support of [his] self-defense theory as true. Instead, it must consider the probability or improbability of the defendant's credibility in light of the circumstances established by other evidence." Leasure v. State, 105 So. 3d 5, 14 (Fla. 2d DCA 2012) (citations omitted). "Thus, a motion for judgment of acquittal should be denied where a jury could reasonably infer guilt and reject the defendant's explanation of self-defense, either because the defendant gave false, inconsistent, or incriminating statements, or because a common sense view of the circumstantial evidence would allow the jury to reject the defendant's story as unbelievable." Cruz v. State, 189 So. 3d 822, 826 (Fla. 4th DCA 2015).

Appellant's Trial Testimony

After initially giving law enforcement four different versions of events, at trial, Appellant admitted that he had lied to police earlier because he was confused, scared, and nervous. He testified to the following fifth version of events. He and the victim were romantically involved, and had a history of disputes that sometimes turned physical but had previously involved only use of bare hands, no weapons. He

4

considered his partner possessive and was tiring of the relationship. On the night in question, the couple were living at a hotel, but Appellant had been out of town visiting family and friends, and the victim—apparently—did not like being left behind.

When he returned to the hotel, Appellant called the victim to let him know that he was outside. Appellant went inside to use the bathroom, and the victim walked outside and got into the driver's seat of the car. When Appellant came out, he got in the back seat of the vehicle. Appellant said he wanted to go back to his mother's house, and the victim said he would take him. When Appellant called his mother and told her that he was coming home, the victim turned around in the driver's seat and began punching Appellant repeatedly in the head. Appellant leaned down to try to grab the door latch so he could get out of the vehicle, and as he felt around, he found a knife on the floor. According to Appellant, the victim's repeated blows prevented him from opening the door. Appellant was afraid he was going to be seriously injured. While the victim was still striking him, Appellant "jabbed" the victim with the knife to stop the attacks. Because the victim continued hitting him, he "jabbed" the victim again with the knife; and after that, the attacks ended. When he saw that the victim was injured, Appellant called 911.

During its case-in-chief, the state presented evidence reflecting the following sequence of events. Just prior to 4:00 a.m. on April 21, 2013, the sheriff's office received two simultaneous 911 calls from what appeared to be the same caller on two different phones. The caller stated that his cousin had stabbed himself in the side and urged the operator to "come on now please." Two police officers were dispatched to the hotel immediately. They heard someone shouting for help from the rear of the hotel, where they found Appellant standing by the driver's door of a car. Appellant had small black objects in each hand, and threw the object from his left hand into the car. An officer ordered Appellant onto the ground and found a folding-blade pocket knife in Appellant's front pocket. Appellant also had a cell phone in his right hand. A very bloody fixed-blade knife was found on the ground nearby, and a second cell phone, also bloody, was found inside the car. Appellant had fresh blood droplets under his eye and on his right forearm, and blood that appeared to be older and dried inside his lip. He did not have any obvious injuries, however.

The victim was in the driver's seat of the car, with blood coming from his mouth, and his left side and front were soaked in blood. Despite efforts at resuscitation, the victim was declared dead at the scene. During the autopsy, the medical examiner identified two sharp force injuries to the victim's left lateral chest wall, one of which was the cause of death. The medical examiner admitted that it

was plausible that the victim was sitting in the front seat while he was stabbed by a person in the back seat. Swabs taken from the knife, cell phone, Appellant's right forearm, Appellant's right cheek, and Appellant's lip and chin all gave chemical indications for the presence of blood. DNA from these swabs matched the victim's DNA profile. A partial DNA profile obtained from the victim's fingernail clippings matched Appellant's DNA profile.

Appellant's Multiple Versions of Events

Appellant's first version, given to the 911 dispatcher, was that his "cousin" stabbed himself in the side.

Appellant's second version, given at the scene of the crime after Appellant was read his rights and agreed to talk, was that when he came out the rear door of the hotel into the rear parking lot area, he saw a black male dressed in black running from the vehicle and out of the parking area. When the officer pressed Appellant on the need to find the person who attacked the victim, Appellant replied that he did not hurt the victim, that he loved the victim very much, and that he "wouldn't do this."

Appellant's third version, given under questioning at the police station, was consistent with his trial testimony on the background and status of his relationship with the victim, Appellant's visit with friends out of town, and his return to the hotel after the victim called him. Appellant claimed that he was walking to the hotel bathroom when he saw the victim coming out of their room and walking toward the

7

back door. Appellant then claimed that as soon as he came out of the bathroom, he saw a black male running out of the parking area, whereupon he went out to the car, saw the victim inside and bleeding under his armpit, and called 911. After further questioning, Appellant stated that the blood in his mouth was the result of play fighting or "slap boxing" with his cousin earlier in the evening.

Appellant's fourth version, given later in the interview at the police station, was that he and the victim had an argument after he returned to the hotel; that he passed the victim coming out of their room as he walked to the bathroom; that the victim appeared angry; that he went to the car where the victim was sitting in the front seat; that he got into the back seat because he was concerned that the victim was going to hit him; that he argued with the victim, who was apparently jealous that Appellant had left him at the hotel; and that when he told the victim he was getting out of the car, the victim shoved him, hit him in the head, and tried to attack him with a knife, which resulted in the victim being stabbed.

Appellant's fifth version, given when police challenged Appellant about *how* the victim was stabbed, was that the victim had repeatedly hit Appellant in the head and this caused Appellant to pick up a knife on the floor and stab the victim in self-defense. This fifth version was consistent with Appellant's trial testimony.

<u>Appellant's Arguments</u>

On appeal, Appellant argues that he was entitled to a dismissal of the charges under the Stand Your Ground Law, and was entitled to a judgment of acquittal for self-defense as a matter of law. Contrary to Appellant's assertion on appeal, the evidence in this case was far from undisputed. As the only surviving witness to the stabbing, Appellant's credibility was a critical issue with respect to both of his arguments. That credibility was undermined by the fact that he gave numerous inconsistent statements regarding the stabbing and fully admitted that he lied to law enforcement. These inconsistent statements, coupled with the physical evidence, were legally sufficient to establish that Appellant (1) was not entitled to Stand Your Ground immunity and (2) was not entitled to a judgment of acquittal for self-defense.

<u>Stand Your Ground Immunity</u>. Even Appellant's final version of what happened—particularly his claim that the victim was the aggressor and inflicted injuries on Appellant—cast substantial and material doubt on his credibility and on the reasonableness of his claim to have been in fear of great bodily harm or death. Specifically, the close confines of the interior of a car, especially with the victim in the driver's seat and having to reach over or between the seats to contact Appellant in the back seat—and Appellant claiming to be cowering behind the protections of the seat structure—cast doubt on the reasonableness of any argument that the victim was, or could have been, inflicting blows that might lead to death or great bodily

9

harm. Appellant had no visible injuries despite his claim that the victim hit him multiple times in the head. Fresh blood on Appellant's right forearm, right cheek, lip, and chin was identified as belonging to the victim. Collectively, this evidence justified the trial court's refusal to confer Stand Your Ground immunity on Appellant.

Moreover, the trial court could have found it improbable that Appellant propitiously discovered a kitchen knife on the car floor while he was being viciously attacked from the front seat by the victim. A more plausible scenario would be that Appellant brought the knife to the vehicle, got into an argument with the victim, and stabbed the victim as he was preparing to drive away. Because Appellant gave a multiplicity of contradictory statements about the events surrounding the stabbing and because Appellant's trial testimony was inconsistent with the physical evidence, the trial court properly concluded that Appellant failed to prove his entitlement to Stand Your Ground immunity by a preponderance of the evidence. See Leasure, 105 So. 3d at 12-13 (agreeing with the trial court that "because of the myriad of inconsistencies in her statements and the inconsistent medical evidence, Leasure failed to prove entitlement to immunity by a preponderance of the evidence").

Self-Defense. The same reasoning and the same result apply to Appellant's claim of self-defense. The jury was not required to accept Appellant's testimony as true, but was required to evaluate his credibility in light of all of the

10

evidence. <u>Leasure</u>, 105 So. 3d at 14. Because Appellant was the only surviving witness to the stabbing, his credibility was a critical issue. As previously stated, that credibility was seriously undermined when he gave numerous false and inconsistent statements regarding the stabbing to the 911 operator and both police officers. Appellant's final version of what happened was called into question by testimony that Appellant had no visible injuries, that fresh blood on Appellant was identified as belonging to the victim, and that Appellant told the police investigator that the suspected dried blood in his mouth was the result of his play fighting with his cousin earlier in the evening. Finally, a jury could find it implausible that Appellant miraculously discovered a kitchen knife on the car's back floorboard while defending himself from a front seat onslaught by the victim.

Because a jury could reasonably reject Appellant's self-defense claim based on a belief that Appellant gave false and contradictory statements and because a common sense view of the circumstantial evidence could allow a jury to reject Appellant's ultimate explanation of what occurred as not being credible, the trial court properly denied Appellant's motion for judgment of acquittal. <u>See</u> <u>Leasure</u>, 105 So. 3d at 14-15 (affirming the denial of murder defendant's motion for judgment of acquittal based on self-defense where defendant's numerous inconsistent statements cast significant doubt on her assertions that she had a reasonable fear of death or great bodily harm and her version of events was not consistent with the

evidence); <u>Stinson</u>, 69 So. 3d at 292 (holding that the state's evidence was sufficient to rebut defendant's theory of self-defense where the state presented evidence that defendant lied to both the 911 operator and the police about her involvement in the shooting and one of the police officers testified that the defendant did not appear disheveled and did not have any bruises that would indicate that she was recently the victim of domestic violence).

<u>Conclusion</u>.

Having concluded that the trial court's rulings were proper, we affirm Appellant's conviction and sentence for second-degree murder with a weapon.

AFFIRMED.

LEWIS and WETHERELL, JJ., CONCUR.