982 So.2d 1190 (2008)
James WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-4756.
District Court of Appeal of Florida, Fourth District.
May 14, 2008.
*1191 Carey Haughwout, Public Defender, and Paul Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals his conviction and sentence for second degree murder with a firearm. He argues, among other things, that the trial court erred in not allowing him to testify that the victim was known to carry a gun. We agree and reverse.
Prior to the shooting, the defendant only knew of the victim, but did not personally know him. He had seen the victim on two occasions during drug buys in which the victim's cousin conducted the transaction in the house while the defendant remained in a car.
On the night of the shooting, the defendant and two women went to a club where the victim and three other men were already inside. At one point a fight broke out between the victim's friends and the defendant. The bouncers escorted everyone but the defendant to the parking lot. Meanwhile, the two women had gone to the defendant's car, and one of them retrieved the defendant's gun.
As the defendant exited the club, the woman with the gun walked toward the defendant, removing the safety lock and handing the gun to the defendant. The defendant saw the victim exit his car and believed he was holding a handgun. The defendant ducked and fired two shots at the victim. He testified that he thought the victim was going to kill him.
After arresting the defendant, law enforcement placed him in an interview room. The defendant was recorded the entire time he occupied that room. After being advised of his Miranda[1] rights, the defendant denied that a fight had occurred in the club and denied having the gun in his car. The defendant then invoked his right to speak to an attorney.
The detective retrieved the defendant's cell phone for him and left the room. The detective admitted that the purpose of giving the defendant his cell phone was to get an incriminating statement from him. While the detective did not monitor what *1192 transpired in the interview room, he subsequently reviewed the DVD of the recording. During a phone conversation with one of the women, who was in the interview room next door, the defendant stated: "Yeah. I told them the same thing. Don't know what the f____ happened. I have told them I don't know what the f____ happened." During another conversation, the defendant said that he "f____ed up" and, "Yeah, man, I try to leave the scene."
By a single Indictment, the State charged both the defendant and the woman with second degree murder with a firearm. The defendant moved to suppress the statements made during the cell phone conversations. The State argued that the statements were not the product of an interrogation.
The trial court denied the motion and made the following findings. The defendant had been informed of his rights and his conduct was consistent with a waiver of those rights. As soon as the defendant asked to speak to his lawyer, the questioning stopped. The defendant had no expectation of privacy in the interview room, and his statements were not the result of questioning.
The first trial ended in a mistrial. The defendant testified at both trials. When asked if he personally knew the victim, the State requested a sidebar and argued that any further testimony would be inadmissible hearsay. The trial court agreed and had the jury taken out. The trial court instructed the defendant that he couldn't testify about what other people had told him.
Defense counsel argued that the evidence about the victim's reputation for violence was not being offered for its truth, but to explain the defendant's actions. The trial court indicated that the testimony would be hearsay, but if he prohibited the testimony "this case is coming back real fast." The jury was brought back in without the court giving the defendant any further instruction.
On re-direct, defense counsel asked the defendant if he had seen the victim with a gun on two prior occasions and whether the victim had a reputation for carrying a gun. The State objected; the trial court sustained the objection without argument. Defense counsel again requested a sidebar where he explained the importance of the testimony to support the defendant's claim of self-defense. The trial court told him to let it go.
At the charge conference the only discussion concerned the lesser included offense of culpable negligence. The trial court charged the jury on second-degree murder by using a single instruction for both co-defendants that contained an "and/or" connector. In addition, the court gave the principal instruction. The court gave the standard jury instruction on the defendant's duty to retreat prior to using deadly force and an instruction that contained a component on the reputation of the victim. There were no objections to the instructions.
The jury convicted the defendant of second degree murder with a firearm. The jury found that the defendant actually possessed and discharged the firearm and inflicted death to the victim as a result of the firearm being discharged. The trial court adjudicated him guilty and sentenced him as a prison releasee reoffender to life imprisonment.
Evidence of the Victim's Reputation for Violence
The defendant argues the trial court abused its discretion when it prevented him from testifying that the victim had a reputation for carrying a gun. The State responds that the defendant did not establish that the community from which *1193 the reputation testimony was being drawn was sufficiently broad to provide adequate knowledge for reliability. Alternatively, the State argues the error was harmless.
"A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion." Dessaure v. State, 891 So.2d 455, 467 (Fla.2004) (citing Blanco v. State, 452 So.2d 520, 523 (Fla.1984)). However, this discretion is limited "by the rules of evidence." Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001).
An exception to the rule that character evidence is inadmissible "permits an accused to use character evidence to show that the victim of a crime was the aggressor and that the accused acted in self-defense." Hedges v. State, 667 So.2d 420, 422 (Fla. 1st DCA 1996). To utilize this exception, "the defendant's prior knowledge of the victim's reputation is not necessary." Smith v. State, 606 So.2d 641, 643 (Fla. 1st DCA 1992) (citing Banks v. State, 351 So.2d 1071, 1072 (Fla. 4th DCA 1977)).
Here, defense counsel attempted to elicit testimony from the defendant that he had seen the victim with a gun on two prior occasions and knew the victim had a reputation for carrying a gun. It is undisputed that the defendant and the victim were involved in a physical altercation inside the club. The defendant claimed he saw a handgun in the victim's possession and shot toward the victim in self-defense. This was sufficient to meet the burden of presenting a predicate to admit character evidence of the victim under sections 90.404(1)(b)1. and 90.405, Florida Statutes (2007). The trial court erred in preventing the defendant from testifying about the victim's reputation for violence and carrying a gun. We therefore reverse and remand the case for a new trial.
The Jury Instructions
We also reverse on alternative grounds. The defendant argues that the court erred in its instruction to the jury on the duty to retreat because the law changed immediately prior to the time of the offense. See § 776.013(3), Fla. Stat. (2005); Ch. 2005-27, § 5, at 202, Laws of Fla. He argues, as he must, that the error was fundamental because the instruction not only misstated the law, but served as a focal point of the State's argument in closing.
The State has three responses. First, the defendant failed to preserve the issue. Second, any error was not fundamental. And third, the failure to object caused the error to be invited.
A trial court's charge to the jury comes to us clothed in a presumption of correctness. James v. State, 695 So.2d 1229, 1236 (Fla.1997) (citing Kearse v. State, 662 So.2d 677, 682 (Fla.1995)). To warrant a reversal, the instruction must be so prejudicial that a miscarriage of justice would result if not corrected. Johnson v. State, 747 So.2d 436, 438 (Fla. 4th DCA 1999) (quoting Lewis v. State, 693 So.2d 1055, 1058 (Fla. 4th DCA 1997)).
Section 776.013, Florida Statutes (2005) became effective on October 1, 2005. Ch. 2005-27, § 5, at 202, Laws of Fla. It provides:
(3) A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
*1194 § 776.013(3). The instant offense occurred on October 3, 2005. Therefore, as the defendant correctly argues, the law did not require him to retreat because he was neither involved in any unlawful activity nor in a place that he did not have a right to be.
"[W]here ... a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant's only defense, it is fundamental error and highly prejudicial to the defendant." Carter v. State, 469 So.2d 194, 196 (Fla. 2d DCA 1985). Here, the trial court's instruction misstated the law on the duty to retreat. We therefore reverse on this issue as well.
We find no fundamental error in the other instructions given.
The Motion to Suppress
We briefly address the denial of the defendant's motion to suppress. The defendant argues that law enforcement violated his constitutional rights by recording him in the interview room. The State responds that no error occurred because the defendant did not have a reasonable expectation of privacy and his statements were not made in response to police interrogation. On this issue, we agree with the State.
A citizen's right to privacy under the Fourth Amendment of the Constitution of the United States is determined by a two prong test: 1) whether the citizen had a subjective expectation of privacy; and 2) whether that expectation was one that society recognizes as reasonable. State v. Smith, 641 So.2d 849, 851 (Fla.1994) (citing Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Under this test, a prisoner does not have a right to privacy because areas of confinement do not share the same attributes as a private car, home, office, or hotel room. Id.
Surreptitiously made recordings of voluntary jailhouse conversations between inmates are admissible, "at least in the absence of any factor diminishing the trustworthiness of the conversation such as coercion or trick." Allen v. State, 636 So.2d 494, 496-97 (Fla.1994). When law enforcement attempted an interview with the defendant, he invoked his right to counsel, and the interview was terminated. The defendant did not ask for privacy, and there was no suggestion that he had any. The trial court did not err when it denied the defendant's motion to suppress. We therefore affirm on this issue.
Reversed and remanded for a new trial.
SHAHOOD, C.J., and POLEN, J., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).